## HUISKAMP *v.* MOLINE WAGON CO.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

Argued April 6, 1887. — Decided April 18, 1887.

In an attachment suit in Missouri the defendant, R., filed a plea in abatement, on which a trial was had, sustaining the abatement. The attachment had been levied on goods claimed by H., by transfer from R., and H. filed an interplea, which was tried. On the trial the court admitted in evidence the proceedings on the trial on the plea in abatement, to show that the transfer was fraudulent on the part of R.; *Held*, that this was error, because H. was not a party to the proceedings on the plea in abatement.

One partner may, with the consent of his copartner, apply the partnership property to the payment of his individual debt, as against a creditor of the partnership, who has acquired no lien on the property.

Where such payment is claimed to be lawful on the ground that the property so applied has become the individual property of the partner making the payment, no creditor of the partnership acquires any right in respect of the property by the fact that he does not know of the transfer of the property to such partner, so long as he has no lien on the property, and it is applied in good faith by such partner to pay his individual debt.

ON the 8th of January, 1880, the Moline Wagon Company, an Illinois corporation, commenced an attachment suit in the Circuit Court of Putnam County, in the state of Missouri, against Jacob Rummel and Edwin R. Cutler, copartners under the name of J. Rummel & Son. The suit was brought under a statute of Missouri, and claimed an indebtedness of $6722.61. The ground on which the attachment was issued was that the defendants had "fraudulently conveyed or assigned their property or effects so as to hinder and delay their creditors," and had "fraudulently concealed, removed or disposed of their property or effects so as to hinder or delay their creditors," and were "about fraudulently to convey or assign their property or effects so as to hinder or delay their creditors." Under this attachment, the sheriff, on the 9th of January, 1880, seized a quantity of goods in the possession of the firm of Huiskamp Brothers, the proceeds of which are

the subject of controversy. These goods were subsequently sold as perishable property, and the proceeds, $5246.50, were placed in court.

On the 15th of March, 1880, the plaintiff removed the suit into the Circuit Court of the United States for the Western Division of the Western District of Missouri. Prior to the sale of the goods, and on the 8th of May, 1880, Huiskamp Brothers filed in the suit, under the statute of Missouri, what is called an interplea, claiming to be the owners of the goods attached, and to have been such owners at the date of the levy of the attachment, and demanding a return of the property.

On the 17th of May, 1880, Rummel filed a plea in the nature of a plea in abatement, denying the indebtedness, denying the several frauds alleged, and praying for an abatement of the attachment and a release of the property. After the sale of the property, and on the 17th of May, 1881, Huiskamp Brothers filed an amended interplea, claiming that when the goods were seized the same belonged to them and were in their possession; that the goods were wrongfully seized; and that the proceeds of their sale, in court, amounting to $5246.50, were their property. The plaintiff answered the amended interplea and denied its allegations. A trial of the interplea was had before the court and a jury in October, 1882, at which a verdict was found that the property attached and the proceeds thereof "were not and are not the property of the interpleaders," on which a judgment was entered for the plaintiff and against the interpleaders, to review which the interpleaders brought this writ of error.

The mode of procedure by interplea, in an attachment suit, where a third party claims the attached property, was authorized by § 449 of the Revised Statutes of Missouri, of 1879, which is as follows: "Any person claiming property, money, effects, or credits attached, may interplead in the cause, verifying the same by affidavit, and issues may be made upon such interplea, and shall be tried as like issues between plaintiff and defendant, and without any unnecessary delay."

The bill of exceptions contained the following statement as to the proceedings had at the trial:

"The interpleaders, in support of their title to the property in controversy, offered testimony, which was admitted, tending to prove such title, as follows:

"First. A chattel mortgage, made by defendant Jacob Rummel, to the interpleaders, on the stock of merchandise, the proceeds of which are in controversy, dated December 24, 1879, and the notes of said Jacob Rummel to said interpleaders secured thereby, of same date, one for $2500 and one for $1500, each due one day after date, and bearing ten per cent. interest from date. Said mortgage was signed and acknowledged in due form and filed for record in the office of the recorder of deeds of Putnam County, Missouri, on January 1, 1880. Said mortgage provided that the mortgagees might sell the mortgaged property at public sale on ten days' notice.

"Second. That said stock of merchandise was actually transferred and delivered to the interpleaders on January 6, 1880, prior to the seizure of the same under the writ of attachment issued in the case of the plaintiffs against the defendants.

"The interpleaders further offered testimony, which was admitted in evidence, tending to show that they were wholesale dealers in boots and shoes in the city of Keokuk, Lee County, Iowa, and had been for many years; that, prior to January, 1878, the defendants Jacob Rummel and Son were partners engaged in business in the town of Unionville, Putnam County, Missouri, under the firm name of Rummel & Son, and their business was that of general retail merchandise, including farming implements, wagons, &c.; that, in January, 1878, the said partners dissolved said firm and divided the property and business thereof, and both of said partners informed the interpleaders of such dissolution.

"That, after such dissolution, the said Jacob Rummel continued at the same place the general retail merchandise business, and the defendant Ed. R. Cutler engaged in the business of selling agricultural implements, including wagons; that, after January, 1878, as between themselves, the said Rummel had no interest in the profits or losses of the business carried on by Cutler in the agricultural implement busi-

ness, and Cutler no interest in the profits or losses of the merchandise business; that the indebtedness for which the stock of merchandise was mortgaged or pledged was for goods sold to Jacob Rummel after the dissolution and division of the business and property of the firm of Rummel & Son; that, when the interpleaders took the mortgage, and also when-they took possession of the stock of merchandise, they understood that the same belonged to Jacob Rummel, and had been led to so believe from the statements of both Cutler and Rummel; that they took said mortgage and possession of said stock of merchandise in good faith, to secure their debt, and not to hinder, delay, or defraud, or to assist in hindering, delaying, or defrauding, the creditors of the said Rummel or Rummel & Son; that Rummel made the conveyance and transfer to the interpleaders in good faith, to secure their debt, and not with the fraudulent purpose of hindering, delaying, or defrauding his creditors, or those of the firm of Rummel & Son."

Luke Huiskamp, one of the interpleaders, testified to the circumstances under which Huiskamp Brothers took the mortgage and entered into possession of the mortgaged property. His testimony showed that they did so upon the understanding and belief, derived from both Rummel and Cutler, that the property belonged to Rummel; and that the only purpose of Huiskamp Brothers was to secure *bona fide* debts due to them, and to certain other creditors, by Rummel.

The bill of exceptions then went on to state as follows:

"Jacob Rummel, a witness for the interpleaders, on his cross-examination, among other things, testified, that Thomas M. Fee was the attorney of interpleaders, and was present at the time of the taking possession by the interpleaders of the property in controversy, and has been such attorney from that time until the present; that, at the time of the trial of the plea in abatement of Rummel, said Fee was the attorney of Rummel, and was employed by Rummel to assist, and did assist, in the trial of such plea in abatement.

"The plaintiffs offered testimony, which was admitted in evidence, tending to show that the interpleaders took the

mortgage on, and possession of, the stock of merchandise in controversy, not in good faith, but to assist the defendant Cutler in hindering, delaying, and defrauding his creditors and the creditors of the firm of Rummel & Son; that there was no dissolution of the firm, or division of the firm property, in January, 1878, or afterwards; that Jacob Rummel made the transfer and conveyance to interpleaders with the intent to hinder, delay, and defraud his creditors; that plaintiffs were engaged in the manufacture and sale of wagons, and had been for many years, and had, prior to January, 1878, dealt with Rummel & Son, and continued to deal with them, after that time; that they never knew of the dissolution of said firm or division of its property, and there never was any published notice of such dissolution; that the debt on which they brought suit in the attachment proceedings was contracted on their part under the belief that the firm of Rummel & Son was still in existence."

The plaintiff then offered in evidence the affidavit on which the attachment was issued in the main suit against Rummel and Cutler, the plea in abatement of Rummel thereto, and that part of the record in the attachment suit which showed the proceedings on the trial of such plea in abatement, including the verdict and the judgment, the verdict being the finding of the issues for the plaintiff, and the judgment being that the plea in abatement be overruled and the attachment sustained. The interpleaders objected to the introduction of the affidavit, plea in abatement, record entries, verdict and judgment, upon the grounds that they were not parties to the trial and issues on the plea in abatement, "and that the issues tried thereon were entirely separate and distinct from the issues upon trial here, and hence the testimony is irrelevant and immaterial, relating to different parties and different subject matter." The bill of exceptions stated that "the court overruled the objections of the interpleaders and admitted said papers for one purpose, to show that the conveyance and transfer of the stock of merchandise in controversy to the interpleaders was fraudulent on the part of Jacob Rummel; to which action of the court, in overruling said

objections and admitting said testimony, the interpleaders at the time excepted."

Under the statute of Missouri, writs of attachment are obtained at the time of or after the commencement of the suit, upon an affidavit specifying one or more of the statutory causes of attachment. Sections 438 and 439 of the Revised Statutes of Missouri provide for the filing by the defendant in the attachment, of a plea, in the nature of a plea in abatement, putting in issue the truth of the facts alleged in the affidavit on which the attachment was sued out, and for a trial of the issue.

In addition to the ruling as to the proceedings on the plea in abatement, the court, in charging the jury, said: "In the attachment suit between the Moline Wagon Company and Rummel and Cutler, Rummel filed what in law is termed a plea in abatement; that is, he denied the facts alleged in the affidavit made by the company to obtain the attachment. The law allows attachments to issue and property to be seized in cases only where debtors have dealt, or are about to deal, with their property in an illegal way. The affidavit made by the Moline Wagon Company at the time they sued out their attachment, in appropriate legal language charged that Rummel and Cutler had or were about fraudulently to convey their property so as to hinder and delay their creditors in the collection of their debts. This charge Rummel denied. A trial which was had on this issue resulted in the sustaining of the attachment; that is, the charge made in the affidavit by the Moline Wagon Company, that Rummel had fraudulently conveyed, or was about fraudulently to convey, the property in controversy, to hinder and delay creditors, was true. Cutler, the defendant with Rummel in the attachment suit, did not appear, and thereby confessed the charge of fraud."

The court also said in its charge: "So far as the intent to defraud, hinder, and delay creditors on part of Rummel is concerned, a trial of that issue has been had in this court, with the result brought to your notice by reading from the records. The intention of Rummel in making the mortgage to Huiskamp Brothers was found to have been fraudulent.

but this of itself is not sufficient to make the mortgage fraudulent as to Huiskamp Brothers. Huiskamp Brothers may have known, when they accepted the mortgage from Rummel, that he intended to defraud, hinder, and delay his creditors by it; yet, if they in no way participated in the fraud of Rummel, did no act to aid or assist him in the illegal act, and intended to secure their debt only, the mortgage as to them is valid, and they are entitled to the benefit of the same; but, on the other hand, if, aside from the securing of their own debt, Huiskamp Brothers, by and through the mortgage, undertook to aid and assist Rummel in his fraudulent purposes to hinder and delay the Moline Wagon Company, or any other creditor, in the collection of their debt, in such case the mortgage is void, and they can claim nothing under it, as against creditors. This is the important question in the case, and you should carefully examine the whole of the testimony bearing upon this point."

The interpleaders excepted to those portions of the charge which referred to the trial of the issues between the plaintiff and Rummel, on the ground that neither the proceedings on Rummel's plea in abatement, nor Cutler's confession of the charge of fraud made in the affidavit, could affect the rights of the interpleaders.

*Mr. James Hagerman* for plaintiffs in error.

*Mr. C. M. Osborn* and *Mr. S. A. Lynde* for defendant in error.

I. (1) If there was no legal dissolution of the partnership, and the partners continued to hold the property in controversy as partnership property, and to deal with it ostensibly as firm property, it remained partnership property so far as creditors are concerned who knew nothing of a division of the property and who trusted the firm.

(2) Where partners continue to carry on business as partners, and under the firm name, and to hold property and deal with it ostensibly as partnership property, such property remains partnership property, notwithstanding a secret agreement of

division of property may have been entered into between the partners, and so far as creditors are concerned who knew nothing of such agreement and gave credit to the firm, the partners, and any purchaser or grantee from them in their individual capacity with notice that the property was being held and ostensibly dealt with by the partners as partnership property, will be equitably estopped from denying its status as partnership property. "The creditors who had dealt with the firm under the belief, superinduced by the acts of all the parties, that they were partners, were entitled to rely not only upon the personal responsibility of all, but upon the equitable security in the partnership effects to be worked out through them." *Kelly* v. *Scott*, 49 N. Y. 595, 599; *Hillman* v. *Moore*, 3 Tenn. Ch. 454, 458. See also *Ex parte Hayman*, 8 Ch. Div. 11; *In re Rowland*, L. R. 1 Ch. 421; *French* v. *Chase*, 6 Greenl. 166; *Lord* v. *Baldwin*, 6 Pick. 348; *Van Valen* v. *Russell*, 13 Barb. 590; *Elliot* v. *Stevens*, 38 N. H. 311.

(3) By a *bona fide* agreement of dissolution and division of partnership property among the partners, or by a *bona fide* transfer of the partnership property to one partner, it is converted into the individual separate property of the partner, wholly free from the claims of the joint creditors, and the partnership creditors are deprived of their quasi lien or derivative equity. *Case* v. *Beauregard*, 99 U. S. 119; *Fitzpatrick* v. *Flannagan*, 106 U. S. 648; *Schmidlapp* v. *Currie*, 55 Mississippi, 597.

(4) To be valid, however, such transfer or agreement of dissolution and division of the partnership effects must be *bona fide;* and if not it is invalid and a nullity, save only in the case of a *bona fide* purchaser for a valuable consideration without notice of the *mala fides* of the transaction. *Case* v. *Beauregard*, 99 U. S. 119; *Howe* v. *Lawrence*, 9 Cush. 555, 556; [1] *Wilson* v. *Robertson*, 21 N. Y. 587; *Ransom* v. *Van Deventer*, 41 Barb. 307; *Ex parte Williams*, 11 Ves. 3, 5; *In re Waite*, 1 Lowell, 207.

(5) A secret agreement of this character between the partners which is not made public or accompanied by public notice and by some open and visible evidence of its existence is fraud-

---

[1] *S. C.* 57 Am. Dec. 68.

ulent and void. *In re Tomes*, 19 Nat. Bank. Reg. 37; *In re McFarland*, 10 Nat. Bank. Reg. 381; *Flack* v. *Charron*, 29 Maryland, 311; *Elliot* v. *Stevens*, 38 N. H. 311; see, also, *In re Shepard*, 3 Ben. 347; *In re Krueger*, 2 Lowell, 66; *In re Dunkle*, 7 Nat. Bank. Reg. 107; *Kelly* v. *Scott*, 49 N. Y. 595.

(6) A conveyance or mortgage of partnership property made by a partner in his individual behalf to satisfy or secure the payment of his individual debts is fraudulent and void as to the partnership and its creditors. *Rogers* v. *Batchelor*, 12 Pet. 221; *Locke* v. *Lewis*, 124 Mass. 1; *Livingston* v. *Roosevelt*, 4 Johns. 251;[1] *Dob* v. *Halsey*, 16 Johns. 34;[2] *Flanagan* v. *Alexander*, 50 Missouri, 50; *Ackley* v. *Staehlin*, 56 Missouri, 558; *Price* v. *Hunt*, 59 Missouri, 258; *Hilliker* v. *Francisco*, 65 Missouri, 598; *Phelps* v. *McNeely*, 66 Missouri, 554; *Johnson* v. *Hersey*, 70 Missouri, 74; *Cotzhausen* v. *Judd*, 43 Wis. 213; *Hurt* v. *Clarke*, 56 Ala. 19. Save only where the grantee or person dealing with the partner did not have notice that the property was partnership property, or that the partner was abusing his powers and authority as a member and agent of the partnership. *Locke* v. *Lewis*, 124 Mass. 1; *Livingston* v. *Roosevelt*, 4 Johns. 251.[1] If he did have notice, the transaction is deemed *mala fide* on his part, and held to be a nullity. *Donovan* v. *Dymond*, 3 Woods, 141; *Cotzhausen* v. *Judd*, 43 Wis. 213.

II. The judgment on the plea in abatement sustaining the attachment and overruling the plea was conclusive evidence of fraud on Rummel's part in executing and delivering the mortgage under which the interpleaders claim title, as against the interpleaders who had become parties to the cause and had interpleaded therein prior to the trial of the plea in abatement. The interpleaders became by their interplea parties to the cause, and were parties and privies in interest with Rummel, their grantor and defendant in the cause. Rev. Stat. Missouri, § 449: "Any person claiming property, money, effects, or credits attached, may interplead in the case, verifying the same by affidavit, and issues may be made upon such interplea, and shall be tried as like issues between plaintiff and defendant, and without any unnecessary delay." See as to

---

[1] *S. C.* 4 Am. Dec. 273.          [2] *S. C.* 8 Am. Dec. 293.

interplea under this statute: *Richardson* v. *Jones*, 16 Missouri, 177; *Richardson* v. *Watson*, 23 Missouri, 34; *Brennan* v. *O'Driscoll*, 33 Missouri, 372; *Ladd* v. *Couzins*, 35 Missouri, 513; *State* v. *Langdon*, 57 Missouri, 353; *McElfatrick* v. *Macauley*, 15 Missouri App. 102; *Wolff* v. *Vette*, 17 Missouri App. 36. See, also, *French* v. *Sale*, 60 Mississippi, 516; *Brown* v. *Dudley*, 33 N. H. 511; Bigelow on Estoppel, 131, 132, 133. And (as exception to the general rule) that judgment against the principal is conclusive on the surety. *Stovall* v. *Banks*, 10 Wall. 583; *Stoops* v. *Wittler*, 1 Missouri App. 420; *Strong* v. *Ins. Co.* 62 Missouri, 289. And as to status of party in interest, though not party to the record. *Wood* v. *Ensel*, 63 Missouri, 193.

MR. JUSTICE BLATCHFORD, after stating the case as reported above, delivered the opinion of the court.

Although the transaction between Rummel and Huiskamp Brothers may have been the subject of the trial on the plea in abatement, we are of opinion that the evidence in question was improperly admitted. In order to invalidate the mortgage of Rummel to Huiskamp Brothers it must have been made with the intent, on the part of Rummel, to hinder and delay his other creditors, and Huiskamp Brothers must have accepted it with the intent of assisting Rummel to hinder and delay his other creditors. A debtor in failing circumstances having the right to prefer a creditor, if the preferred creditor has a *bona fide* debt, and takes a mortgage with the intent of securing such debt, and not with the purpose of aiding the debtor to hinder and delay other creditors, the mortgage is valid, even though the mortgagee knows that the debtor is insolvent and that the debtor's intention is to hinder and delay other creditors. It was necessary, therefore, for the plaintiff, on the trial of the issue with the interpleaders, to make proof of the unlawful intent of Rummel in making the mortgage, irrespective of any intent of Huiskamp Brothers in accepting it. Such proof could not be made as against the interpleaders, in view of what the evidence which they offered tended to show, by proving that the issue

as to the intent of Rummel had been tried and found against him in the trial on his plea of abatement. That was an issue to which the interpleaders were not parties, and the record of its trial was wholly inadmissible as against the interpleaders. The bill of exceptions states that the papers were admitted to show " that the conveyance and transfer of the stock of merchandise in controversy to the interpleaders was fraudulent on the part of Jacob Rummel." The interpleaders were not parties to the proceedings, did not appear in them, did not control them, and cannot be affected by them. For this error there must be a new trial; but, as there were other parts of the charge of the court, and refusals of the court to charge as requested by the interpleaders, which were excepted to, and which we think were erroneous, and which may recur upon a new trial, it seems proper to consider them.

The following portion of the charge of the court was excepted to : " But if no legal dissolution of the partnership took place in January, 1878, or since, and the partners continued to hold the property in controversy as partnership property, bought, sold, and advertised it as firm property, such property remained partnership property, so far as creditors are concerned, who knew nothing of the division and who trusted the firm. Under the view of the case last presented you will have to determine whether there was a dissolution of the partnership. As already stated, it is an undisputed fact, that, up to January, 1878, a partnership between Rummel and Cutler did exist; that that partnership dealt in general merchandise, including farming implements, wagons, etc., and that dealings prior to that time were had between the Moline Wagon Company and the firm of Rummel & Son. The Moline Wagon Company had a right to presume that the persons once composing a firm, and who continued doing business under the firm name, are still partners, and that the partnership continues to exist until notice of a dissolution was given. No agreement or understanding between the partners — no division of the property of the firm — can relieve either the firm or the partners of their legal liability as to creditors who extend credit to the firm, nor are creditors who extend credit to the firm bound

to regard public rumors, even if they heard them, if the partners continue the partnership name and avail themselves of the partnership credit. You are, therefore, instructed that the partnership between Rummel and Cutler existing in 1878 continued to exist up to the time of the creation of the debts sued on by the Moline Wagon Company, unless public notice of the dissolution of the partnership was given, or actual notice of such dissolution was brought home, to the Moline Wagon Company. If, under this view of the law, you shall find, from the evidence, that plaintiff, the Moline Wagon Company, gave credit to the firm of Rummel & Son, composed of Rummel and Cutler, then the firm and each of the partners are liable for the debt thus contracted. All of the assets of the partnership, both merchandise, notes, and accounts, as well as all wages and property of the partnership which Cutler " [Rummel?] " may have handled in his division of the partnership, as well as all notes and accounts which Cutler may have taken, together with all property of the partners, in case of insufficiency of partnership assets, are liable for debts created by the partnership. If you shall find that the partnership once existing between Rummel and Cutler had not been dissolved, and the property in dispute to be partnership property, then Rummel could not take such partnership property and pay an individual debt with it, such as Huiskamp Brothers claim to have, and the mortgage read in evidence, given them, is void as against creditors of the firm."

In connection with this portion of the charge, the interpleaders requested the court to give the following instructions to the jury:

" 3. If the jury find, from the evidence, that Rummel and Cutler led Huiskamp Brothers to believe that the goods belonged to Rummel, and they accepted the mortgage and took the goods under such belief, then they are entitled to the same rights, by virtue of the mortgage and their possession, as if the goods actually belonged to Rummel at the time the mortgage was made, and when they took possession of the goods."

" 4. If the jury find, that, as between Rummel and Cutler, the

goods belonged to Rummel at the time he made the mortgage and Huiskamp Brothers took possession of the same, then the interpleaders are entitled to recover, although, as to the plaintiffs in this case, the firm of Rummel & Son, was in existence by reason of the fact that the plaintiffs had never been notified of any change of the firm of Rummel & Son. In such case, Rummel & Son would be liable to the plaintiffs, but the plaintiffs would have no lien on the stock of goods, and Huiskamp Brothers could acquire title thereto by a valid mortgage from Rummel."

"5. There is a difference between the dissolution of a firm and the settlement of the accounts of the partners between themselves and the firm. A partnership may be dissolved and the property divided in part, leaving the settlement of the accounts between the partners to be effected in the future; and, in this case, if the firm of Rummel & Son was dissolved in 1879, and Rummel took the stock of merchandise, with the consent of his copartner, and was to be charged therewith, then from that time, as between Rummel and Cutler, the former would be the owner of the goods, and could make a valid mortgage of the same in his own name."

"7. The test of a partnership, as between the partners, is the sharing of the profits and the losses of the business; and, in this case, if, after January 18, 1878, Cutler was not to share the profits and losses of the store business, but Rummel alone was to have such profits and bear such losses, then after that time, as between themselves, they were not partners in fact. If they should lead others to believe that they were partners, then they would be liable to whoever acted on such belief and gave them credit. Such creditors would not, however, have a lien on the property belonging to one of the partners, as between themselves, and could not claim the same from a party who, in good faith, for value, took such property from the partner really owning it."

The court refused to give these instructions, and to its action in respect to each the interpleaders excepted.

The substance of the concluding sentence of the portion of the charge last above recited is, that, even though the partner-

ship between Rummel and Cutler was not dissolved, and the property continued to be partnership property, it was not in the power of Rummel, even with the consent of Cutler, to take any of such property and pay with it the individual debt of Rummel to Huiskamp Brothers, and, therefore, the mortgage to them was void, as against the plaintiff. The plaintiff had introduced testimony on the trial tending to show that there was no dissolution of the firm of Rummel & Son, nor any division of the firm property, in January, 1878, or afterwards; and the instruction referred to was based upon the view that the jury might find that the partnership was never dissolved, and its property never divided. But the instruction was contrary to the ruling in the case of *Fitzpatrick* v. *Flannagan*, 106 U. S. 648, 654, where this court, speaking by Mr. Justice Matthews, said: "The legal right of a partnership creditor to subject the partnership property to the payment of his debt consists simply in the right to reduce his claim to judgment, and to sell the goods of his debtors on execution. His right to appropriate the partnership property specifically to the payment of his debt, in equity, in preference to creditors of an individual partner, is derived through the other partner, whose original right it is to have the partnership assets applied to the payment of partnership obligations. And this equity of the creditor subsists as long as that of the partner, through which it is derived, remains; that is, so long as the partner himself, in the language of this court in *Case* v. *Beauregard*, 99 U. S. 119, 125, 'retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce, through it, the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration.'"

It follows, from this view, that, even though the partnership of Rummel & Son was not dissolved, Rummel had the right, with the consent of Cutler, to appropriate the property to the payment of his individual debt to Huiskamp Brothers, because the plaintiff, at the time the mortgage was made by Rummel to Huiskamp Brothers, had no specific lien upon the

property, and there was no trust impressed upon it at that time, which could be enforced by the plaintiff. It was only necessary that the disposition of the property should have been *bona fide* on the part of both parties, and without any intent to hinder or delay the plaintiff. *Howe* v. *Lawrence*, 9 Cush. (Mass.) 553,[1] and cases there cited; *Locke* v. *Lewis*, 124 Mass. 1.

It was also error in the court to refuse to charge as requested in the 4th prayer of the interpleaders, that if, as between Rummel and Cutler, the goods belonged to Rummel, the interpleaders were entitled to recover, although the plaintiff had not been notified of any change in the firm of Rummel & Son; and error to charge as it did, the converse of this proposition. The fact of notice or no notice to the plaintiff could not affect the question in issue, so long as the plaintiff had acquired no lien on the goods prior to the mortgage by Rummel to the interpleaders, and that mortgage was made in good faith.

It was also error in the court to refuse to charge, as requested in the 5th prayer of the interpleaders, that "if the firm of Rummel & Son was dissolved in 1879, and Rummel took the stock of merchandise, with the consent of his copartner, and was to be charged therewith, then, from that time, as between Rummel and Cutler, the former would be the owner of the goods, and could make a valid mortgage of the same in his own name." The proposition involved in this request presupposes, of course, that the transaction between Rummel and Cutler was made in good faith, and in that view, the instruction requested was in accordance with the rule laid down by this court in *Case* v. *Beauregard* and approved in *Fitzpatrick* v. *Flannagan*, to the effect, that "if, before the interposition of the court is asked, the property has ceased to belong to the partnership, if by a *bona fide* transfer it has become the several property either of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end." See also *Howe* v. *Lawrence* [1] and *Locke* v. *Lewis*, (above cited).

*The judgment of the Circuit Court is reversed, and the case is remanded, with a direction to award a new trial.*

---

[1] *S. C.* 57 Am. Dec. 68.