# FIFTH DISTRICT, 1896.

### M. J. BATCHELOR v. SANGER BROS.

Delivered December 3, 1896.

**Partnership — Preference Assignment by, Securing Individual Debts of Member.**

The members of an insolvent partnership, in the absence of fraud, have the right, as against firm creditors, to settle their partnership between themselves by agreement, and to secure the individual debts of a partner by an assignment with preference, provided the individual debts so secured do not exceed the interest of such partner in the assets of the firm.

APPEAL from Limestone. Tried below before Hon. RUFUS HARDY.

*Kimball Bros. & Blackmon,* for appellant.—1. An insolvent copartnership can lawfully appropriate partnership property or funds to pay the individual debts of one of its members with the consent of all the partners. Wiggins v. Blackshear, 26 S. W. Rep., 939; Stancel v. Fleming, 81 Texas, 294; Wallis v. Satterfield, 20 S. W. Rep., 155; Willis v. Heath, 18 S. W. Rep., 801; Goddard v. McCune, 25 S. W. Rep., 906; Sexton v. Anderson, 8 S. W. Rep., 564; Carver Gin and M. Co. v. Bannon, 4 S. W. Rep., 831; Purple v. Farrington, Lawyer's Reports, book 4, p. 535; Seger v. Thomas, 18 S. W. Rep., 33; Reynolds v. Johnson, 16 S. W. Rep., 124; Fletcher v. Sharp, 116 Ind., 317; Case v. Beauregard, 99 U. S., 119.

2. No preference which it is lawful for a failing debtor to make can be fraudulent in law as to his other creditors, even though the effect of it is to hinder and delay such other creditors in the collection of their debts. Finn v. Krutt, 34 S. W. Rep., 1013; North v. Shearn, 15 Texas, 175; Ellis v. Valentine, 65 Texas, 53; Chesser v. Clamp, 30 S. W. Rep., 466; Waples on Homestead and Ex., 505, 509, 510 and note, 512; Palmer v. Hawes, 50 N. W. Rep., 341; Meigs v. Dibble, 73 Mich., 101.

[No brief for appellee reached the Reporter.]

LIGHTFOOT, Chief Justice.—Appellees have filed no brief in this court. On December 16, 1895, J. Y. Lenior & Bro., a firm composed of J. Y. Lenoir and I. N. Lenoir, executed to appellant J. T. Batchelor, as trustee, a mortgage or deed of trust upon their stock of goods and other property, to secure certain debts therein mentioned. The trust was accepted by appellant, who was one of the secured creditors, and also by the other preferred creditors named in class A of the mortgage.

Appellees, Sanger Brothers, who were secured in class B of the instrument, declined to accept under it, and brought suit in the District Court of Limestone County against J. Y. Lenoir & Bro. upon their debt, and caused a writ of garnishment to be sued out and served on J. T. Batchelor, as trustee, who filed his answer setting up the deed of trust, showing the amount of funds on hand, the debts preferred and the previous garnishments of other creditors, in amount more than sufficient to consume the fund.

Appellees contested the answer and claimed that the deed of trust was fraudulent and void, because it was made to hinder, delay and defraud the creditors of the firm of J. Y. Lenoir & Bro., and they had preferred G. W. Carpenter, W. C. Jackson and J. T. Batchelor, who each held notes aggregating about $900, which were vendor's liens upon the homestead of J. Y. Lenoir, and his individual debts, and that Kimbell Bros. and Blackman, and also W. S. Lenoir, who were also secured in said instrument, had notice of such fraudulent preferences.

The case was tried before the court without a jury, and resulted in a judgment in favor of appellees, Sanger Brothers, against the garnishee J. T. Batchelor for their debt, interest and costs; that the deed of trust was valid as to certain creditors named, viz., Dr. J. M. Conrad, for $180; E. E. Seay, for $54.50; J. E. Oliver, for $995.85, and A. P. Morris, for $25, and as to all other debts in class A, it was held to be void and of no effect. The garnishee was ordered to pay out of the funds in his hands the debts above mentioned, and that he should next satisfy the judgment of the first garnishers, Marx & Blum and Rotan Grocery Company, and that he should deliver the balance of the money in his hands to the sheriff or any constable presenting an execution in favor of Sanger Brothers against J. Y. Lenoir & Bro., or so much of it as should be sufficient to satisfy such execution. From this judgment the trustee has appealed.

It fully appears from the undisputed evidence that on December 16, 1895, J. Y. Lenoir & Bro. executed to appellant, as trustee, the deed of trust mentioned, which was accepted by him and all the preferred creditors mentioned in class A. That included in class A were the claims of T. J. Batchelor upon two notes of $162.50 cents each, aggregating $325, and bearing 10 per cent interest from January 18, 1894; W. C. Jackson two notes aggregating $240, and G. W. Carpenter, one note for $120, the last three notes bearing interest at ten per cent per annum from November 25, 1895, and that all of said notes were vendor's liens

upon the homestead of J. Y. Lenoir, one of the partners of the firm of. J. Y. Lenoir & Bro.

It further appears that after the execution of the deed of trust, the trustee immediately took possession of the property and converted most of it into cash, except the notes and accounts.

It further appears that the amount realized by the trustee from the proceeds of the personal property, after paying expenses, was deposited in bank, and amounts to $2433.93, and that the notes and accounts amount to $3174.24, and are worth about 40 cents on the dollar. The amount of money now in the hands of the trustee is not sufficient to pay the debts of the preferred creditors named in class A, and the debts of the prior garnishing creditors, Marx & Blum and Rotan Grocery Company, as set out in garnishee's answer, if established by judgments, amount to more than the face value of the notes and accounts.

It further appears from the undisputed evidence that when the partnership of J. Y. Lenoir & Bro. was formed, J. Y. Lenoir put in $3000 and I. N. Lenoir $1000, and it was agreed between them that the former should be paid out of the profits of the business a sufficient amount to reimburse him for the excess of capital put in. A short time before the deed of trust was made, the parties undertook to adjust between themselves the differences between them, and in such adjustment J. Y. Lenoir conveyed to his partner I. N. Lenoir thirteen acres of land (owned by the former individually), worth about $800 or $900, and the latter conveyed to the former a house owned by him on leased land, worth $250, and it was agreed by both parties that the firm of J. Y. Lenoir & Bro. would assume the payment of the notes of T. J. Batchelor, W. C. Jackson and G. W. Carpenter, which had previously been valid debts against J. Y. Lenoir, individually, and liens upon his homestead.

The material question raised on this appeal is, whether an insolvent partnership, by the agreement of each of the partners, can lawfully appropriate partnership assets to the payment of the individual debts of one of the partners. In the case of Johnson v. Shoe Co., 5 Texas Civ. App., 398, we reviewed at some length the authorities bearing upon the question, and held that such appropriation could not be made without the consent of all the partners. We quote from that opinion as follows: "How far a partner can go, by consent of all the partners, in mortgaging the firm assets to secure the individual debts of one of the partners, has been the subject of much discussion. In the case of Fitzpatrick v. Flannagan, 106 U. S., 654, which is quoted with approval in the later case of Huiskamp v. Moline Wagon Company, 121 U. S., 323, Judge Matthews says: 'The legal right of a partnership creditor to subject the partnership property to the payment of his debt consists simply in the right to reduce his claim to judgment, and to sell the goods of his debtors on execution. His right to appropriate the partnership property specifically to the payment of his debt in equity, in preference to creditors of an individual partner, is de-

rived through the other partner, whose original right is to have the partnership assets applied to the payment of partnership obligations. And this equity of the creditor subsists as long as that of the partner, through which it is derived, remains; that is, so long as the partner himself, in the language of this court in Case v. Beauregard, 99 U. S., 125, retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce through it the application of those assets primarily to payments of the debts due them, whenever the property comes under its administration.'· And in the case of Huiskamp v. Moline Wagon Company, 121 U. S., 323, above, it is held that one partner, by the consent of the other, may appropriate the partnership effects to the payment of his individual debt.

"There is no specific lien upon the partnership assets in favor of partnership creditors. The quasi lien, so often referred to, and about which so much confusion has arisen, exists only through the primary right of the other partner to have the assets of the firm so applied as to do justice to him.

"It has been held by our own Supreme Court as follows: 'That partners, by agreement between themselves, and without reference to the wishes of firm creditors, may convert partnership property into the separate property of one partner, is well settled; and when this is done, the right of the partner to have the property subjected to the payment of firm debts, as it before existed, ceases; and with the cessation of his right, goes every right in the nature of a lien the firm creditors, through him, had.' Stansell v. Flemming, 81 Texas, 298.

"In the case of Grabenheimer v. Rindskoff, 64 Texas, 52, the court treats the right of a partnership creditor to the satisfaction of his debt out of partnership assets as only a subrogated right, derived through the partners themselves. See also, Kendall v. Hockworth, 66 Texas, 490; Weaver v. Ashcroft, 50 Texas, 427.

"In the case of Willis Bros. v.·Thompson, 85 Texas, 311, where one partner had sold out his interest in the partnership property to his brother, a short time before the failure, without reserving any lien in favor of partnership creditors, the court said: 'The quasi lien of a partnership creditor depends entirely upon the existence of the right of the individual partners to have the firm property applied to the satisfaction of the partnership debts.' And in that case it was held, that the right of the selling partner to have the partnership property so applied, having passed away by his sale, the quasi lien of the firm creditors passed with it; and the case of Willis v. Heath, 18 S. W. Rep., 801, is referred to with approval.

"In that case one partner had sold out his interest before the mortgage, and the partnership creditors were insisting on a lien in favor of partnership debts. The court said: 'The right is but a quasi lien, and is founded entirely upon the right of each individual partner to have the common property subjected to the payment of the debts of the firm be-

fore resorting to the separate property of the partners, individually. When the partnership is dissolved by mutual consent, or otherwise, and all the partners have retained their interest in the concern until that time, then we do not doubt that each of them, or any firm creditor, may enforce the right above described; but, upon the other hand, as long as the partnership continues, each of the partners may transfer his interest in the joint property to the other partner, or to any one else, * * * and thereby waive or abandon any lien he might have otherwise had upon the property; and as a consequence, the [property could thereafter be subjected to the claims of the individual creditors of the vendee, or sold by him, free from any lien or claim of the creditors of the old firm.'

"From all of the above authorities, we find the following conclusions applicable to the case before us:

"1. That each member of a partnership, so long as it exists, has a quasi lien upon the assets of the firm for the payment of the firm debts before the payment of any individual debts of any member of such firm.

"2. That when the firm becomes insolvent, the creditors of the firm, through the partners, may enforce the quasi lien in their favor, unless the same has been lost or waived by the individual members of the firm.

"3. That an individual member of an insolvent partnership cannot execute a valid mortgage upon the partnership assets to secure his individual debts, without the consent of the other members of the firm."  5 Texas Civ. App., 298.

Since the above opinion was rendered the question has been directly passed upon by our Supreme Court in the case of Wiggins v. Blackshear, 86 Texas, 670, where the court says:  "As partnership creditors had no lien on firm property, no reason is perceived why each member might not lawfully permit the other to pay his individual debt out of his own share of the partnership property; and the same reasons which would make lawful such a payment would give validity to a mortgage given by both partners to secure debts of members of the firm.

"Conveyances or mortgages given under such circumstances and for such purposes are not voluntary and therefore fraudulent as to partnership creditors.

"If the sums each partner owed individually had been equal, no one would doubt their perfect right, under agreement between themselves, to pay or secure their several debts with partnership assets, for this would be simply using by each one what belonged to him for a lawful purpose.

"That their several debts were not exactly equal is a matter of no importance in view of the fact that the share of each in firm assets exceeded in value the individual debt of each secured by the mortgage."  See also, Waples-Platter Co. v. Mitchell, 35 S. W. Rep., 200; Bird v. Perry, 7 Texas Civ. App., 390; Wallis v. Satterfield, 20 S. W. Rep., 155; Goddard v. McCune, 25 S. W. Rep., 906.

In the absence of any evidence of fraud, we feel constrained to hold that the partners composing the firm of J. Y. Lenoir & Bro. had a right to adjust their partnership matters between themselves, and in such settlement it appearing that J. Y. Lenoir was entitled to the larger share of the assets, and that his individual debts secured did not exceed his part of the assets, such preferences did not render the deed of trust fraudulent as to the firm creditors.

In this view of the case, it is unnecessary to consider the other assignments of error in detail.

The judgment of the court below is reversed, and judgment will be here rendered, that the deed of trust is decreed to be valid as to all the accepting creditors who are named in class A, and the trustee is directed to pay out of the funds in his hands each of said debts according to the terms of the deed of trust, and the expenses of executing the trust. If anything shall remain, he is directed to pay the same upon the debts of the garnishing creditors mentioned in his answer, and which may be established by judgments against J. Y. Lenoir & Bro., in the order in which such garnishment liens were fixed by service upon him, until such funds shall be exhausted. Appellant recovers against appellees the costs of this court and of the court below; but in the event the funds in the hands of the trustee shall not be exhausted in the execution of the deed of trust and in payment of prior garnishments, then the trustee shall pay out of such funds remaining in his hands, as far as they will go, the costs of the garnishment of Sanger Bros., up to and including the original answer of the garnishee, and such judgment as they may establish against J Y. Lenoir & Bro.

*Reversed and rendered.*