## In re ZARTMAN.

(District Court, M. D. Pennsylvania. June 2, 1917.)

No. 2959.

1. BANKRUPTCY &#8731;351—CLAIMS—PRIORITY—PARTNERSHIP AND INDIVIDUAL CREDITORS.

Under Bankr. Act July 1, 1898, c. 541, § 5f, 30 Stat. 547 (Comp. St. 1916, § 9589), providing that the net proceeds of partnership property shall be appropriated to the payment of partnership debts and the net proceeds of the individual estate of each partner to the payment of his individual debts, a creditor of a former partnership had no preferential right to payment out of property formerly belonging to the partnership, where prior to bankruptcy the partnership was dissolved in good faith and the property turned over to the continuing partner, the bankrupt, on his promise to pay the debts of the partnership.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 563, 564.]

2. BANKRUPTCY &#8731;228—REFEREE—REVIEW OF PROCEEDINGS.

Where the referee awarded a fund derived from the sale of property of the bankrupt to the trustee in preference to the claim of a creditor, and such creditor merely excepted to the conclusions and order of the referee, without petitioning for review, the matter was not formally before the court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387.]

In Bankruptcy. In the matter of William P. Zartman, bankrupt. On review of the referee's order awarding funds to the trustee. Affirmed.

James G. Hatz, of Harrisburg, Pa., for claimant.
H. S. Knight, of Sunbury, Pa., for trustee.

WITMER, District Judge. The court is requested to review the decision of the referee, awarding the fund derived from the sale of certain personal property to the trustee in bankruptcy in preference to

the claim of James G. Hatz, who sought to follow, and subject to the payment of the partnership debt, this property, which formerly belonged to the partnership, having since been transferred by the retiring partner to his copartner, the bankrupt, close to a year prior to the filing of the petition.

There is little, if any, controversy respecting the facts. On November 26, 1913, and for some time prior thereto, C. I. Tressler and Wm. P. Zartman were associated as copartners under the firm name of C. I. Tressler Lumber Company, and were operating their plant in Dauphin county on the lumber operation known as the Fishing Creek Valley or Heck operation. They jointly had title to certain real estate and to personal property, consisting of horses, wagons, mill, camp equipment, etc. On the day named, the C. I. Tressler Lumber Company executed and delivered to James G. Hatz a judgment note, amounting to $2,000, payable to his order, for money loaned by Hatz to the Lumber Company. The note was signed by the Pine Creek Lumber Company, W. P. Zartman, C. I. Tressler Lumber Company, C. I. Tressler, Manager, and C. I. Tressler, and was afterwards entered of record on July 20, 1914, in the court of common pleas of Dauphin county, Pa., to No. 318, December term, 1914. Subsequently, to wit, on or about October 6, 1914, the partnership between Zartman and Tressler was dissolved; the former taking over all of the assets of the partnership, and the latter retiring, with the understanding and agreement that Zartman was to continue the operation of the lumber business, and to assume the payment, and actually pay, all of the debts of the C. I. Tressler Lumber Company.

Zartman afterwards continued the business of the lumber operations, formerly conducted by Tressler, until May 26, 1915, when an involuntary petition in bankruptcy was filed against him, resulting in his adjudication as a bankrupt on July 16, 1915. At or about the time the petition in bankruptcy was filed, an execution was issued on the Hatz judgment, in pursuance of which the sheriff of Dauphin county levied upon the personal property contained in and about the Fishing Creek or Heck operation, most of which property was among the assets of the partnership taken over by Zartman on the dissolution of the partnership, and was levied as the property of Wm. P. Zartman. On application of the bankrupt's receivers, the court, on August 6, 1915, granted an order restraining the parties interested from proceeding any further on certain executions, and at the same time ordered the receivers, who had been authorized to sell said property, to impound the proceeds derived therefrom pending the determination of the question as to whether or not said money should be given to the bankrupt estate or be applied to the Hatz judgment.

It is contended by Hatz that distribution should be made in accordance with the well-settled principle that "when there are two classes of creditors and two funds, and one class of creditors can only go against one fund, while the other class of creditors can go against both, the court will marshal the assets, restricting the creditors who have a double security from touching the fund applicable to the payment of the first class of creditors until they are paid in full," in so

far as the same has been incorporated into the present Bankruptcy Act, § 5f, as follows:

"The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership."

It is Hatz's contention that we have here two funds, partnership and individual, and correspondingly two classes of creditors, and that this is a case for the application of the doctrine of marshaling of assets. On the other hand, it is contended, and the referee ruled, that by virtue of the dissolution agreement and transfer of the interest of Tressler to Zartman the latter became the sole owner, and that there is now no partnership fund to be administered. The dispute, it will be seen, largely hinges on the validity of the dissolution and transfer. It was said by Mr. Justice Strong, in delivering the opinion of the court in Case v. Beauregard, 99 U. S. 124, 25 L. Ed. 370:

"No doubt the effects of a partnership belong to it, so long as it continues in existence, and not to the individuals who compose it. The right of each partner extends only to a share of what may remain after payment of the debts of the firm and the settlement of its accounts. Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of the partnership debts in preference to those of any individual partner. This is an equity the partners have as between themselves, and in certain circumstances it inures to the benefit of the creditors of the firm. The latter are said to have a privilege or preference, sometimes loosely denominated a lien, to have the debts due to them paid out of the assets of a firm in course of liquidation, to the exclusion of the creditors of its several members. Their equity, however, is a derivative one. It is not held or enforceable in their own right. It is practically a subrogation to the equity of the individual partner, to be made effective only through him. Hence, if he is not in a condition to enforce it, the creditors of the firm cannot be. Rice v. Barnard et al., 20 Vt. 479 [50 Am. Dec. 54]; Appeal of the York County Bank, 32 Pa. 446. But so long as the equity of the partner remains in him, so long as he retains an interest in the firm assets as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce, through it, the application of those assets primarily to payment of the debts due them, whenever the property comes under its administration. It is indispensable, however, to such relief, when the creditors are, as in the present case, simple contract creditors, that the partnership property should be within the control of the court and in the course of administration, brought there by the bankruptcy of the firm, or by an assignment, or by the creation of a trust in some mode. This is because neither the partners nor the joint creditors have any specific lien, nor is there any trust that can be enforced until the property has passed in custodiam legis. Other property can be followed only after a judgment at law has been obtained and an execution has proved fruitless. So, if before the interposition of the court is asked the property has ceased to belong to the partnership, if by a bona fide transfer it has become the several property either of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end. It is therefore always essential to any preferential right of the creditors that there shall be property

owned by the partnership when the claim for preference is sought to be enforced. Thus, in Ex parte Ruffin, 6 Ves. 119, where from a partnership of two persons, one retired, assigning the partnership property to the other, and taking a bond for the value and a covenant of indemnity against debts, it was ruled by Lord Eldon that the joint creditors had no equity attaching upon partnership effects, even remaining in specie. And such has been the rule generally accepted ever since, with the single qualification that the assignment of the retiring partner is not mala fide. Kimball v. Thompson, 13 Metc. (Mass.) 283; Allen v. Center Valley Company et al., 21 Conn. 130, 54 Am. Dec. 333; Ladd v. Griswold, 4 Gilman (9 Ill.) 25, 46 Am. Dec. 443; Smith v. Edwards, 7 Humph. (Tenn.) 106, 46 Am. Dec. 71; Robb and Others v. Mudge and Another, 14 Gray (Mass.) 534; Baker's Appeal, 21 Pa. 76, 59 Am. Dec. 752; Sigler & Richey v. Knox County Bank, 8 Ohio St. 511; Wilcox v. Kellogg, 11 Ohio, 394."

[1] Nor does it appear that section 5f of the Bankruptcy Act materially differs from the general rule of equity stated by Justice Strong. It creates no specific lien upon partnership property which continues after the property has ceased to belong to the partnership. It does not forbid bona fide conversion of the partners of the joint property into rights in severalty, and it relates to partnership property alone, and gives a rule for marshaling such property between creditors. True, it gives to joint creditors a privilege while the property belongs to the partnership; but when such joint ownership has ceased there is no subject remaining upon which it can operate. In the argument, Mr. Hatz attempted to impeach the bona fides of the shifting of the relations between the partners, in which he has not succeeded. There is nothing in the record that discloses want of good faith, or an intention to hinder and delay; nor could such inference be deduced from the showing made of the financial condition of the partnership, or of the conduct of the several partners. The bankrupt, Zartman, after taking final and exclusive possession of the partnership property, in attempting to comply with his promise in writing, attempted to pay the partnership debts, and succeeded in liquidating the same in excess of the value of the personal property turned over to him. Now, conceding that the disposition of the property was bona fide on the part of both parties, and without any intent to hinder and delay, the property yielding the fund for disposition ceased to belong to the partnership before the interposition of the court, and, having become the several property of Zartman, the equities of the several partners were extinguished, and the derivative equities of the creditors are at an end. Huiskamp v. Moline Wagon Co., 121 U. S. 310, 7 Sup. Ct. 899, 30 L. Ed. 971.

[2] It may also be suggested that the matter is not formally before the court on exceptions to the conclusions and order of the referee without petition for review.

The order of the referee, awarding the fund to the trustee, is affirmed.