| 66 | 499 |
| 75 | 252 |
| 66 | 499 |
| 81 | 298 |
| 66 | 499 |
| 90 | 583 |

## WM. E. KENDALL V. S. A. HACKWORTH.

(Case No. 5470.)

1. VENUE—DOMICIL—AMENDMENT—EFFECT—If a party is properly sued in a county other than that of his domicil, the questions as to what matters may be litigated in the suit under amendments varying the issues to be tried, and what subject matters may be added by way of amendment are to be determined by the rules regulating amendments, regardless of the residence of the defendant.

2. AUDITOR'S REPORT—OBJECTIONS TO ITEMS—PRACTICE—Objections and exceptions
to the correctness of items of an auditor's report serve the purpose of admitting
evidence to contradict the report in those particulars; they need not be treated
as pleadings and read as such on the presentation of the case.

3. SAME—WAIVER—See opinion for acts not constituting a waiver of such objec-
tions.

4. PARTNERSHIP ASSETS—SETTLEMENT—EFFECT—Partnership lands, when divided be-
tween the partners by a settlement, cease to be partnership assets and are
effectually withdrawn from the partnership business; such a settlement, if
fairly made, in the absence of fraud or mistake would stand until re-opened or
set aside by appropriate proceedings.

APPEAL from Harris. Tried below before the Hon. James Mas-
terson.

Hackworth, the appellee, brought suit against Kendall, the appel-
lant, in the district court of Fort Bend county, on March 1, 1883.
The allegations in the original petition were in substance to the effect
that the parties to the suit, in 1874, formed a partnership for the pur-
pose of buying large tracts of land and selling them out in small tracts
to settlers. That afterwards they evidenced their agreement by each
signing the following memorandum:

RICHMOND, Nov. 9, 1875.

"Be it known, that we, W. E. Kendall and S. A. Hackworth, for
the mutual good of ourselves and others, commenced, some two years
ago, the business of buying and selling land, upon the following con-
ditions: Kendall was, and is, to buy the land, perfect titles, &c.;
Hackworth to find purchasers, attend to surveying, &c. After the
original purchase-money was paid, then the profits arising from our
enterprise are to be equally divided between us."

The petition showed that in accordance with the above agreement,
five tracts of land in all were purchased, named as follows, viz: The
lower half of the Isaac McGary league, 2214 acres; the upper half of
Isaac McGary league, 2214 acres; the Joseph Powell 1107 acres, some-
times called Powell Point tract; the Elizabeth Powell 1114 acres, and
the J. McCormick 3001 acres, the last named being the land in con-
troversy. That titles, with the exception of the upper McGary league,
were taken in the name of Kendall; that at the time of the purchase
of the McCormick league, there was $800 in money belonging to the
partnership in Kendall's hands, which, by agreement and direction of
plaintiff, was invested in the first part payment of the purchase money
of this tract, it being also agreed that all cash funds of the partner-
ship coming into Kendall's hands thereafter should be applied to the
payment of the remaining purchase-money.

The petition showed that up to August 20, 1879, most of the land

in each of four of the five tracts had been sold, but that none of the land in the McCormick league had been sold. That at that time there was a balance of $714.65 in the hands of Kendall, "which had been, for a long time prior to August 20, 1879, invested by defendant in the McCormick land. An exhibit purporting to be a full statement of all the transactions between the parties relative to the alleged partnership matters, the same showing how the balance of $714.65 was arrived at, was attached to the petition. That on August 20, 1879, the parties "met for the purpose of adjusting and settling their co-partnership accounts," and entered into an agreement which was reduced to writing, and signed and delivered in duplicate, from which the following extracts contain all that is pertinent to the decision of this case:

"Know all men by these presents, that we, W. E. Kendall and S. A. Hackworth, have this day mutually agreed upon the following settlement of our land enterprise in said county and state, to wit: It appearing from our records that but little discrepancy exists when comparison thereof was made, we hereby confirm our original understanding, in which, after a tract of land was bought and the original purchase-money is paid, then the profits arising from the sale thereof are to be equally divided between us. This agreement embraces the upper and lower half of the Isaac McGary league of land, and the upper quarter of the Elizabeth Powell league and the Joseph Powell part of a league, all situated on the east side of the East San Bernard river, in said county and state, but does not embrace the McCormick survey."

That on July 10, 1881, as shown by exhibits attached to the petition, showing all transactions between the parties up to that date, after the previous settlement, Kendall had received $643.50 in excess of his share, which added to $714.65 alleged to be in Kendall's hands on August 20, 1879, made $1,358.15 due Hackworth. That all the lands remaining unsold in the first four named trusts were, December 18, 1882, divided between the parties by mutual deeds. That the cost of this McCormick land was $2,400.

The petition alleged that after the last mentioned date, December 18, 1882, "the only land remaining on hand as the property of the partnership was, and still is, the three thousand and one acres of the Joseph McCormick league," that on July 15, 1881, plaintiff's contributions to the purchase money thereof amounted to $1,358.15, and that by virtue of the investment in the land of $1,358.15, he had an equitable title to an undivided twenty-seven forty-eighth part of the three thousand and one acres. Plaintiff prayed that an account be taken "of all and every of said partnership dealings and transactions, that the co-partnership be dissolved, that the land be partitioned, and

for such other and further relief as the court should deem just and proper." The petition showed that Kendall was a resident of Harris county.

The defendant, on April 27, 1883, plead under oath, the fact of his residence in Harris county, "in abatement of this suit in so far as plaintiff sought to recover of defendant other relief than the establishment of plaintiff's alleged interest in the McCormick land." He also raised the same point by exceptions, and filed general and special answers.

On April 28, 1883, W. F. Collier was appointed auditor "to restate the accounts between the parties, and to especially report what partnership funds, if any, had been appropriated to payment for the McCormick league. On May 8, 1883, the auditor filed his report in Fort Bend county. The report purported to be a "true statement" of the "state of the account between the parties," commencing with items occurring in 1874. It showed a balance in cash and purchase-money notes in the hands of Kendall of $2,453.13, half of which, or $1,284.06, was due Hackworth. The report showed that $816.57 of the above sum, in cash, was in Kendall's hands on December 12, 1875, the date of the purchase of the McCormick league. The auditor stated in his report that he could not determine whether any of the partnership funds were invested in the McCormick league, on account of legal questions necessary to be passed upon in determining that point.

On May 9, 1883, plaintiff filed his first amended original petition, which differed from his original petition only in elaborating more profusely the matter alleged in the former, and in adopting the account stated in the auditor's report in lieu of the account originally filed as exhibits. There was no material change in the prayer. On May 10, 1883, the second day after the auditor's report was filed, defendant filed his "exceptions and objections" to the same, claiming that it was erroneous for the reasons set forth under twelve distinct heads, as "first mistake," "second mistake, etc."

Under the head of "first mistake," defendant set up the fact that on August 20, 1879, and December 17, 1879, plaintiff and defendant had a complete adjustment of their affairs up to those dates, and a division of the net profits arising from the proceeds of the sales of the lands, and evidenced the fact of such settlement by signing two certain instruments in writing, copies of which were attached to and made a part of the exceptions. That though the instruments showing these settlements in full up to those dates were presented to the auditor, he ignored the same, and ignored the fact of the settlements, and went behind them, and that hence the report "which purports to show the condition of

the account up to December 17, 1879, is illegal and void." Defendant said that should the court hold that the report might nevertheless be considered, "then defendant presents the following objections, * * * and prays that the same may be considered by the court and jury." The remainder of the objections specified mistakes in the items of the report amounting to $2,873.36 in favor of defendant.

The same day, May 10, 1883, defendant filed his first amended answer, to which the exceptions to the auditor's report were annexed and made a part, though the same were filed separately, and separately endorsed by the clerk. In this answer defendant made the same exception to the petition set forth in his original answer, and specially plead the settlements of August 20, and December 17, 1879, making copies of the instruments signed by the parties, in evidence of the settlement, a part of his answer. No ruling was had on any point raised by the pleading until after the venue of the case was changed to Harris county.

On April 26, 1884, plaintiff attached a prayer in the alternative to his first amended original petition, praying for a settlement of the partnership account between himself and the defendant, and the recovery of a personal judgment against. defendant for such sum as should be found to be due him in the event of his failure to establish an interest in the McCormick league. By agreement of counsel, the rewriting of the entire petition was waived, and it was agreed that it should be refiled with the amendment to the prayer, as plaintiff's second amended petition.

On May 15, 1884, defendant filed what was endorsed as his "second amended original answer." It contained exception and pleas to the jurisdiction of the court invoked on the issue set up by the prayer in the alternative, and also all the exceptions and special answers contained in defendant's first amended answer. On May 18, 1884, the court having overruled all defendant's pleas and demurrers, and a jury having been waived, judgment was rendered quieting defendant's title to the land, and giving plaintiff judgment against defendant for the sum of $1,389.63.

The assigned errors, relied on in the brief of appellant's counsel, were as follows, viz:

First error assigned, the same constituting a proposition: "The court erred in overruling defendant's exceptions and plea to the jurisdiction of the court below, which were invoked by plaintiff on the issue set up for the first time in plaintiff's second amended original petition, filed April 26, 1884, by a prayer in the alternative asking for the settlement of an alleged partnership account, for the recovery

of a judgment for an alleged balance of partnership funds in defendant's hands, the plea and exceptions being attached to defendant's second amended original answer, filed May 15, 1884."

Third and fourth errors assigned, the same constituting a proposition: "The court erred in refusing to permit defendant to introduce evidence for the purpose of showing the mistakes in the report of the auditor, and pointed out by objections and exceptions to said report, filed May 10, 1883," * * * * "and in adopting said report, and rendering judgment against defendant for the sum found by the auditor."

Fifth error assigned, the same constituting a proposition: "The court erred in going behind the settlements had between plaintiff and defendant, as alleged in defendant's answer, and proven on the trial, and in considering items in the account attached to plaintiff's petition bearing date prior to the settlement, and in considering transactions between plaintiff and defendant prior to said date and the settlements, in order to obtain said sum of $1,389.63, on which to render the judgment."

Sixth and seventh errors assigned, the same constituting the following proposition under the above assignments of error: "The court erred in disregarding defendant's plea of the statute of limitations and of laches and delays on the part of plaintiff, and the evidence in support of the same."

There were also other assigned errors discussed in the brief which need not be here recited.

*Brady & Ring*, for appellant, on jurisdiction, cited: Mabry v. Birdge, 44 Tex., 283; Duty v. Graham, 12 Tex., 427; Mann v. Falcon, 25 Tex., 271; Denison v. League, 16 Tex., 405; Texas v. Hardenburg, 10 Wall., 86; Jurisdiction, R. S., Art. 1198, 79; Baker v. Chisholm, 3 Tex., 157; Aulanier v. Governor, 1 Tex., 667; Snyder v. Wiley, 59 Tex., 448.

On the introduction of evidence to show mistakes in the auditor's report, they cited: R. S., Arts. 1471–1474; Barkley v. Tarrant county, 53 Tex., 253; Whitehead v. Perie, 15 Tex., 7; Boggs v. State, 46 Tex., 13;  ‑
Hughes v. Christy, 26 Tex., 233.

On reopening settlements, they cited: Horan v. Long, 11 Tex., 290; Barkley v. Tarrant county, 53 Tex., 251; Sup., 255; Merriweather v. Hardeman, 51 Tex., 442; Murphy v. Stell, 43 Tex., 123; Wilkinson v. Thulemeyer, 44 Tex., 470; Rowe v. Collier, 25 Tex., 1.

As to parol evidence affecting settlements, they cited: Stachely v Peirce, 28 Tex., 335; Self v. King, 28 Tex., 553; Railway Company v. Shirley, 45 Tex., 378; Watrous v. McKie, 54 Tex., 71.

*Hutcheson & Carrington,* for appellee, on jurisdittion, cited: Bliss on Code Pleading, 166, etc.; Story's Eq. Jur., 73; Bourke *v.* Vanderlip, 22 Tex., 221.

WALKER, P. J., COM. APP.—The suit having been brought in Fort Bend county, where jurisdiction rightfully belonged under the case stated in plaintiff's original petition, that court would retain its jurisdiction over the case in respect to any supplemental cause of action subsequently engrafted on the original cause of action by an amended petition, unless such amendment set up such additional cause of action fraudulently to deprive the defendant of his personal privilege to litigate it in the county of his residence.    To hold otherwise would be to attach a condition to the right to amend the cause of action as originally declared on, incompatible with the spirit of the law regulating amendments, and which the statute has not prescribed. If a party has been properly sued in a county other than that of his domicil, the subsequent proceedings in respect to the matters that may be litigated in it under amendments varying the character of the issues to be tried, and what subject matters may be added by way of amendment for determination in that suit, are to be determined not on a question of privilege as to where such matters may be tried, but according to the rules of law which determine what may be added by way of amendment to the subject of litigation as it was presented in the original petition.    The general policy of the law is to avoid a multiplicity of suits; and it favors the adjustment of the rights of the parties in one suit if it can be done consistently with those rules of law, which for their own reasons fix a limit and a boundary to the liberal rule which thus encourages the settlement of controversies in one suit where it can be done, so as not to drive a party to another suit and before another forum to adjust that which may be settled in that jurisdiction before which the parties already are.

The right given by the statute to be sued in certain classes of actions in the county of his residence, is to be construed relatively to and with other statutes and rules of pleading and procedure, and when the suit is brought in a proper county, although it be not in that of the defendant's residence, in the absence of fraud, ordinarily, the suit will proceed subject to the rules of law common to all other cases, unaffected by a question of venue.    This cause having been, by consent of parties, removed, by change of venue, to Harris county, where the defendant resides, and his plea in abatement and exceptions to the jurisdiction having been filed after the cause was pending in the district

court of Harris county, it requires a nice discrimination, we think, to perceive the merit of defendant's objection.

If his privilege was to be sued in Harris county, the change of venue to that county had the effect to accord to him all the benefits contemplated by the privilege the statute accords to him, and in such case, the law, which does nothing vainly, would not, whilst the cause was pending in Harris county, dismiss it, in order that it might be brought anew in that county.

The error assigned, it will be noticed, does not call in question the propriety of the court's allowing the plaintiff to set up, by way of amendment, those matters concerning which the defendant urges he was entitled to be sued in the county of his residence. We are of opinion that if the subject was otherwise proper as an amendment, the defendant cannot successfully maintain the proposition that it must be rejected from the suit because of his residence elsewhere than in Fort Bend county; that his privilege to be sued in the county of his residence has no proper application to the case.

We think the court erred in refusing to permit defendant to introduce evidence for the purpose of showing the mistakes in the report of the auditor, that were designated in the written objections and exceptions to the report, filed May 10, 1883. The plaintiff's grounds of objections, first, that the exceptions and objections had not been properly made and presented to the court, and second, because the objections and exceptions to the report were not presented as pleadings, before the trial began, were not sufficient. No special reason seems to have been offered to support the first ground, nor is any apparent; and as to the second, we know of no rule of practice or principle of pleading that requires objections and exceptions to the correctness of items of an auditor's report to be treated as pleadings, and to be read as such on the presentation of the case to the court and jury on the trial. Where the objection relates to the form of the report or its validity, as a compliance with the order of the court requiring it to be made, proper practice would perhaps, require such to be presented to the court for its action before going into the trial; but objections to the report which relate to the correctness of the matters contained in it, serve the purpose of admitting evidence as to such items to contradict the report in those particulars. R. S., 1473; 46 Tex., 10; 38 Tex., 523; 44 Tex., 623.

The report, with reference to matters not properly arising under the pleadings, should, on exception, be excluded from the jury. 53 Tex., 251. The court, it would seem from the bill of exceptions, was influenced in rejecting the evidence by the supposition that the defendant

had abandoned or waived his written objections and exceptions because they had been referred to in his first amended answer and had been made a part of it, and he had not in his second amended answer made any reference to them.   The bill of exceptions recites that said exceptions and objections to the report were filed May 10, 1883, in the district court of Fort Bend county, and were endorsed with a separate file mark on that day; that they had been attached to and made a part of defendant's first amended answer, and were attached to said answer when it was re-filed in Harris county after the venue was changed, but that *they* had never been endorsed with any separate file mark in Harris county.   The objections to the report had no such relation to the pleadings in the case as to affect that paper with the rule of the supreme court for the government of the district court under which an amendment of an answer subsequently made, supersedes the antecedent pleading, and deems matters waived that were contained in the previous pleading, if not brought into the amendment which takes its place.

The objections and exceptions to the report were no part of the defendant's answer; it was a separate and independent paper, the scope and purpose of which was not connected with the answer in the sense of its constituting a part of it as such.   No inference can fairly be drawn from the defendant's second amended answer to warrant the belief that the defendant meant to relinquish his exceptions and objections to the report.   The plaintiffs' case against the defendant as to the remedies sought under the amendments he made to his cause of action as it was presented in the original petition, rendered still more important to the defendant a reliance on the objections urged by him to the auditor's report, and it would seem to require something more definite and affirmative in its character than any of the matters recited in the bill of exceptions, to justify the court in construing his action as a waiver of such objections.   For this error we think the judgment ought to be reversed.

In respect to the fifth error assigned, the tenor and effect of the defendant's answer setting up particular settlements between the parties of certain subjects of their partnership affairs during the progress of their partnership, was to eliminate them from the partnership account remaining yet to be settled.   If they were once fairly settled between the parties, and the lands to which those settlements referred, were, as to the unsold balance of the respective tracts, divided between them, as to such property it ceased to be partnership assets and was thereby effectually withdrawn from the partnership business, and such a settlement, if fairly made, in the absence of fraud or mistake, would

stand until reopened or set aside by appropriate proceedings for that purpose, which is not sought to be done on either of those grounds under the pleadings of the plaintiff. Whether such settlements were in fact made was in issue, and it was a question as to the weight to be given to the evidence *pro* and *con* whether they were established to the satisfaction of the court. The instruments in writing tending to support the defendant's defense of settlement in regard to the lands referred to, were subject to be construed in determining their legal effect and the weight to be given them in the light of the facts surrounding the parties at the time they were executed, and parol testimony on the subject was before the court, and the court was not bound to accept as conclusive of the issue the instruments alone as isolated evidence from which to determine the matter. It follows from this view that if the court had been satisfied from all the evidence that such settlements had been made, that the report of the auditor, in so far as it militated with such elimination of the account in respect to the lands concerning which the settlement was made, would of necessity yield, and in those particulars would have to be qualified so as to conform to the very truth and facts, and it would not, as to such items, afford a basis for ascertaining the true balance, if any, to which the plaintiff would be entitled.

In respect to the appellant's proposition that the court erred in disregarding his plea of the statute of limitations, and of laches and delays on the part of the plaintiff, and the evidence in support of it, we are not able to determine from the record what views of the law on that subject the court entertained or acted upon. If the court was of opinion, from the whole evidence, that there had been no settlements made between the parties which operated to adjust any particular item, or items, or transactions, relating to their partnership affairs, but that their accounts had been, in effect, kept open between them, the statute of limitations could not have applied, because four years would not have elapsed at the institution of the suit, since the accrual of plaintiff's right to sue for an accounting. R. S., Art. 3205.

But if, on the other hand, the account between the parties in respect to certain of their dealings, had become "stated," or had, as alleged, been settled and adjusted, as to them, the rules of law in respect to the running of the statute, and the equitable doctrine of stale demand, has application. We are not disposed, unnecessarily, to anticipate the questions that might be discussed in this connection under an assignment of error so general and indefinite as applied to the record before us. We deem it sufficient in support of the suggestions we have

made, to refer to the elementary writers on the subject in a very general way.   See 1 Wood's Collyer on Part., 456–462, 618, secs. 297–298, 398.

We do not regard it essential to further discuss the errors assigned, as those which we have considered reach, we think, sufficiently the merits of this appeal.

We are of opinion that the judgment be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted June 23, 1885.]

---

*NOTE.—This opinion was delivered at Austin, and the record returned to Galveston.  The record was misplaced, and hence it appears out of its due order.—REPORTER.