JOHN T. JOHNSTON v. THE STANDARD SHOE COMPANY.

No. 89.

1. **Rights of Partners—Firm Assets.**—Each member of a partnership, so long as it exists, has a quasi lien upon the assets of the firm for the payment of the firm debts before the payment of any individual debts of any member of such firm.

2. **Rights of Firm Creditors.**—This quasi lien enures to firm creditors, and when the firm becomes insolvent, the creditors of the firm, through the partners, may enforce the quasi lien in their favor, unless the same has been lost or waived by the individual members of the firm.

3. **Mortgage to Secure Individual Debts.**—An individual member of an insolvent partnership can not execute a valid mortgage upon the partnership assets to secure his individual debts, without the consent of the other members of the firm. The legal effect of the chattel mortgage in this case is held to hinder, delay, and defraud the creditors of the firm.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*Coombes & Gano,* for appellant.—1. The question of insolvency is wholly immaterial and inadmissible where the issues involved between the parties is the validity of a deed of trust executed to secure creditors. Scott v. McDaniel, 67 Texas, 316; Hudson v. Milling and Elevator Co., 79 Texas, 401; Ellis v. Valentine, 65 Texas, 533.

2. Where a deed of trust is executed to secure creditors, is received in good faith by the trustee, who takes possession of the property, and there is no fraud on the part of the creditors, the mere fact that one of the deeds was invalid or did not exist could not render the instrument void. Ellis v. Valentine, 65 Texas, 533.

*McCormick & Spence,* for appellee.

LIGHTFOOT, CHIEF JUSTICE.—On January 31, 1889, the mercantile firm of Hunstable & Moore executed to appellant, John T. Johnston, their clerk, as trustee, a chattel mortgage upon their stock of merchandise and

fixtures, to secure certain debts therein named; among others, a debt for $3700 to the Blake Mutual Building and Loan Association. The deed of trust was duly filed for registration, and the trustee took ostensible possession of the property, and while in such possession it was levied upon by the sheriff of Dallas County, under a writ of attachment sued out in the case of the Standard Shoe Company v. Hunstable & Moore. The trustee sued the sheriff and appellee for damages for conversion of the goods. Judgment was rendered below for the defendants, from which the trustee, Johnston, has appealed.

The first four assignments of error, setting out objections to the testimony of the witnesses Clark, McCormick, Wright, and Doremus, are not well taken. The appellees had in their pleadings alleged that Hunstable & Moore were insolvent and being pressed by their creditors before the execution of the chattel mortgage, and that it was executed for the purpose of hindering, delaying, and defrauding their creditors. In such cases the courts have not been inclined to restrict too closely inquiry into the financial condition of the partners; the testimony was admissible.

The main question involved in the case grows out of the contest over the claim of the Blake Mutual Building and Loan Association, which was the principal debt, and about the only one which can plausibly lay claim to an acceptance of the mortgage.

The charge of the court complained of by appellant in his assignment of errors is to the effect, that if the debt of the Blake Mutual Building and Loan Association secured in the mortgage was not the firm debt of Hunstable & Moore, but the individual debt of William Hunstable, then the same would not avail against the Standard Shoe Company, who are shown to have been creditors of said firm at the time. This raises the important question, as to how far an insolvent partnership can prefer the individual debts of one of its members, to the exclusion of the partnership creditors.

A party who is insolvent may execute a chattel mortgage upon his property to pay his honest debts, and may give preference among his creditors. But a mortgage executed by a failing debtor with intent to hinder, delay, or defraud his creditors, is void as to any such creditor who has notice of such fraudulent purpose and assists in the execution of it.

The weight of authority holds to the doctrine, that as a rule partnership debts claim a priority of payment out of partnership assets before the individual debts of one of the members of the firm, unless it is made to appear that there is enough partnership property to satisfy both. De Caussey v. Bailey, 57 Texas, 669; Converse v. McKee, 14 Texas, 20; Phipps v. Sedgwick, 96 U. S., 3; Phillips v. Ames, 87 Mass., 184; Vernon v. Upson, 60 Wis., 418; Herman v. Hart, 55 Mich., 64; Patterson v. Seaton, 70 Iowa, 689; Brecher v. Fox, 1 Fed. Rep., 273; Goodbar v. Cary, 16 Fed. Rep., 317; Keith v. Fink, 47 Ill., 272; 1 Bates on Part., sec. 566.

If a partner should attempt, without the consent of his copartner, to appropriate to the payment of his own debts a portion of the firm assets, it would be a fraud upon the partner whose assent was not given, and he could set aside such appropriation.    In case of insolvency, the creditors of a firm, by proper proceedings, can set aside such wrongful appropriation of the firm assets.    De Caussey v. Bailey, 57 Texas, 669; Converse v. McKee, 14 Texas, 20; 1 Bates on Part., sec. 410.

In the case of De Caussey v. Bailey, above, there was an attachment sued out against J. H. McCarty & Co., a firm composed of McCarty, De Caussey, and Anderson, and levied upon the property of the firm of De Caussey & Anderson, composed of only two members of the first named firm.    One of the firm creditors of De Caussey & Anderson, having obtained an attachment against them, intervened in the suit, claiming the prior right to subject the assets to their debt.    The court found the law against them, on the ground that there was no proof of insolvency, and because it did not appear that there was not enough property to satisfy both the firm creditors and those debts upon which they were bound outside.

In this case it appears from the testimony, that the firm was insolvent, and that the mortgage embraced all the assets of the firm, and was not enough to pay the debts.    The mortgage was executed by Mr. Hunstable, for the firm; the other partner, Mr. Moore, did not testify in the case, and it does not appear that the mortgage was executed with his consent; but the right of a managing partner to execute a mortgage on the firm property to pay firm debts is fully recognized by this court in the case of Keller v. Self, decided at the present term [ante, 393].

How far a partner can go, by consent of all the partners, in mortgaging the firm assets to secure the individual debts of one of the partners, has been the subject of much discussion.    In the case of Fitzpatrick v. Flannagan, 106 United States, 654, which is quoted with approval in the later case of Huiskamp v. Moline Wagon Company, 121 United States, 323, Judge Mathews says:    " The legal right of a partnership creditor to subject the partnership property to the payment of his debt consists simply in the right to reduce his claim to judgment, and to sell the goods of his debtors on execution.    His right to appropriate the partnership property specifically to the payment of his debt, in equity, in preference to creditors of an individual partner, is derived through the other partner, whose original right is to have the partnership assets applied to the payment of partnership obligations.    And this equity of the creditor subsists as long as that of the partner, through which it is derived, remains; that is, so long as the partner himself, in the language of this court in Case v. Beauregard, 99 United States, 125, ' retains an interest in the firm assets, as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce through it the application of

.those assets primarily to payment of the debts due them, whenever the property comes under its administration.' " And in the case of Huiskamp v. Moline Wagon Company, 121 United States, 323, above, it is held that one partner, by the consent of the other, may appropriate the partnership effects to the payment of his individual debt.

There is no specific lien upon the partnership assets in favor of partnership creditors. The quasi lien, so often referred to, and about which so much confusion has arisen, exists only through the primary right of the other partner to have the assets of the firm so applied as to do justice to him.

It has been held by our own Supreme Court as follows: "That partners, by agreement between themselves, and without reference to the wishes of firm creditors, may convert partnership property into the separate property of one partner, is well settled; and when this is done, the right of the partner to have the property subjected to the payment of firm debts, as it before existed, ceases; and with the cessation of his right, goes every right in the nature of a lien the firm creditors, through him, had." Stansell v. Fleming, 81 Texas, 298.

In the case of Grabenheimer v. Rindskoff, 64 Texas, 52, the court treats the right of a partnership creditor to the satisfaction of his debt out of partnership assets as only a subrogated right, derived through the partners themselves. See, also, Kendall v. Hockworth, 66 Texas, 490; Weaver v. Ashcroft, 50 Texas, 427.

In the case of Willis & Bro. v. Thompson, 85 Texas, 311, where one partner had sold out his interest in the partnership property to his brother, a short time before the failure, without reserving any lien in favor of partnership creditors, the court said: "The quasi lien of a partnership creditor depends entirely upon the existence of the right of the individual partners to have the firm property applied to the satisfaction of the partnership debts." And in that case it was held, that the right of the selling partner to have the partnership property so applied, having passed away by his sale, the quasi lien of the firm creditors passed with it; and the case of Willis v. Heath, 18 Southwestern Reporter, 801, is referred to with approval.

In that case one partner had sold out his interest before the mortgage, and the partnership creditors were insisting on a lien in favor of partnership debts. The court said: "The right is but a quasi lien, and is founded entirely upon the right of each individual partner to have the common property subjected to the payment of the debts of the firm before resorting to the separate property of the partners, individually. When the partnership is dissolved by mutual consent, or otherwise, and all the partners have retained their interest in the concern until that time, then we do not doubt that each of them, or *any firm creditor, may enforce*

*the right above described;* but, upon the other hand, as long as the partnership continues, each of the partners may transfer his interest in the joint property to the other partner, or to any one else, * * * and thereby waive or abandon any lien he might have otherwise had upon the property; and as a consequence, the property could thereafter be subjected to the claims of the individual creditors of the vendee, or sold by him, free from any lien or claim of the creditors of the old firm."

From all of the above authorities, we find the following conclusions applicable to the case before us:

1. That each member of a partnership, so long as it exists, has a quasi lien upon the assets of the firm for the payment of the firm debts before the payment of any individual debts of any member of such firm.

2. That when the firm becomes insolvent, the creditors of the firm, through the partners, may enforce the quasi lien in their favor, unless the same has been lost or waived by the individual members of the firm.

3. That an individual member of an insolvent partnership can not execute a valid mortgage upon the partnership assets to secure his individual debts, without the consent of the other members of the firm.

In applying these principles to this case, we find that none of the creditors secured seem to be relying upon the security in this mortgage, except the Blake Mutual Building and Loan Association and Blankenship & Blake, by whom it was gotten up and whose debts would absorb the principal part of the assets. The trustee testified that none of them had accepted it. The cashier of the City National Bank testified, that the bank had not accepted; that their debt was otherwise secured, and had since been paid by Mr. Blake, who took up the collateral held by the bank. None of the creditors are parties to this suit. Mr. Block testified, that the firm of Block Brothers had not signified any acceptance, but had brought suit for their debt. The other two debts, that of Blankenship & Blake and that of the Blake Mutual Building and Loan Association, were both represented by Mr. Blake. There is no doubt that these two had full notice of the purposes and intentions of the mortgagor in making the instrument. What were these purposes? The verdict of the jury, in the light of the testimony, leaves no doubt, first, that the firm of Hunstable & Moore was insolvent and pressed by its creditors; second, that one member of the firm arranged with the Blake Mutual Building and Loan Association, of which Blankenship & Blake are members, by which a large portion of the assets of the firm was paid upon the purchase of a lot and the erection of a dwelling upon it, which was outside of and beyond the scope of the partnership business, which was the purchase and sale, at retail, of boots and shoes; third, that before the failure, Mr. Hunstable, one member of the partnership, having sold his former homestead, moved into the house with his family, and set up claim thereto as his homestead; fourth, that a short time after the failure, the association gave William

Hunstable credit for the assets of the firm already paid on the house, and caused Mr. B. Blankenship to execute him a deed individually thereto, taking his individual notes, secured by a vendor's lien on the property, which was a part of the Blankenship & Blake addition to the city of Dallas, for the balance due; so that if there was ever any shadow of claim' for holding this to be a debt of Hunstable & Moore, such debt, as a firm obligation, passed away upon the novation of the contract with William Hunstable.

The evident purpose of the mortgage was to use the balance of the firm assets to pay for the homestead of one of the partners, to the detriment of the firm creditors. That purpose was known by the creditors who are claiming under the mortgage, and they assisted in getting it up.

Whatever might have been their views as to the legal phases of the question, and the rights of a failing debtor, its legal effect was to hinder, delay, and defraud the creditors of the firm of Hunstable & Moore, and as to them it was void.

It is not necessary in this case, for us to pass upon the question as to what would be the effect of such a mortgage upon the rights of innocent creditors under the mortgage, who at the time of its execution had no knowledge of any fraudulent intent upon the part of the mortgagor. In this case the appellant himself, in speaking of the remnants of the stock, testified, that after the levy of the attachments, "I sold it out and paid clerk hire and other necessary expenses. I also sold some machines and implements which were in the repair shop. A note was given for the purchase price, *and I turned it over to Mr. Hunstable.*" He was the former clerk of Hunstable & Moore, and was made trustee under the instrument; he evidently felt that he held it for his employer, and he acted accordingly.

For the reasons above indicated, we find no material error in the judgment which would authorize us to reverse the case, and it is affirmed.

*Affirmed.*

Delivered November 29, 1893.