SHERK v. FIRST NAT. BANK OF HEREFORD et al.

(Court of Civil Appeals of Texas. Amarillo. Dec. 7, 1912. On Motion for Rehearing, Jan. 11, 1913.)

1. PARTNERSHIP (§ 183*)—TRANSFER OF PARTNER'S INTEREST.

A lien given by a partner on his interest in the partnership property to secure an individual indebtedness is not invalid merely because the partnership is insolvent at the time.

[Ed. Note.—For other cases, see Partnership, Cent.Dig. §§ 312, 319–336, 348; Dec.Dig. § 183.*]

2. PARTNERSHIP (§ 76*)—INTEREST OF PARTNER IN FIRM PROPERTY.

A partner's right in the firm property is in effect a right to share in the surplus after discharging the firm debts, including reimbursements for advancements in excess of his proportional share.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 116, 124; Dec. Dig. § 76.*]

3. PARTNERSHIP (§ 179*)—RIGHT OF PARTNER AS TO APPLICATION OF ASSETS TO FIRM DEBTS.

Each partner has the right to require the application of all the firm assets to the payment of the firm debts.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 314; Dec. Dig. § 179.*]

4. PARTNERSHIP (§§ 95, 227*)—TRANSFER OF PARTNER'S INTEREST — PROPERTY ASSIGNABLE.

A partner's right to share in the surplus after payment of debts and to have the firm assets applied to the payment of firm debts is property which can be sold and transferred and is transferred by a sale and transfer of his interest in the firm property either to his partner or to a stranger.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 142, 143, 473–475; Dec. Dig. §§ 95, 227.*]

5. PARTNERSHIP (§ 264*)—PURCHASE OF COPARTNER'S INTEREST—EFFECT.

A sale and transfer of a partner's interest in the firm property to his copartner dissolves the partnership, extinguishes the partner's rights in the property as partnership assets, and converts the property into the individual

property of the purchaser free from the equities of the seller, even though the purchaser has agreed to pay the firm debts.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 608, 614, 617; Dec. Dig. § 264.*]

6. VENDOR AND PURCHASER (§ 231*)—CONSTRUCTIVE NOTICE—RECORD.

A partner, who purchased his copartner's interest in the firm realty and other realty owned by the copartner individually, was charged with notice of a recorded deed of trust thereon given by the copartner and could not deny that he had notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 513–539; Dec. Dig. § 231.*]

On Motion for Rehearing.

7. SUBROGATION (§ 41*)—PLEADING AND EVIDENCE.

Before subrogation can be decreed, the facts from which it arises must be distinctly and appropriately alleged and shown, and the equity therefrom must plainly appear.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 109–118; Dec. Dig. § 41.*]

8. SUBROGATION (§ 23*)—PERSON MAKING ADVANCES FOR DISCHARGE OF INCUMBRANCES.

Where partners who had given a vendor's lien on land borrowed upon their personal responsibility without security the money necessary to discharge the lien, the lien was extinguished and could not be subsequently revived for the benefit of one of the partners who paid the loan, and hence he was not entitled to be subrogated to the rights of the lienor, but was only entitled to reimbursement out of the firm assets.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 60–66; Dec. Dig. § 23.*]

9. PARTNERSHIP (§ 183*)—RIGHT TO HAVE ASSETS APPLIED TO FIRM DEBTS—LOSS.

A partner, who purchased his copartner's interest and undertook to settle with the firm creditors and the copartner's individual creditors, instead of invoking the aid of the court to administer the assets so as to give partnership creditors and himself preference, lost his partnership lien and took the copartner's interest subject to a deed of trust thereon, previously executed and recorded.

[Ed. Note.—For other cases, see Partnership, Cent.Dig. §§ 312, 319–336, 348; Dec.Dig. § 183.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by A. L. Sherk against the First National Bank of Hereford and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Barcus & North, of Weatherford, for appellant. Carl Gilliland, of Hereford, for appellees.

HUFF, C. J. The appellant, A. L. Sherk, brought suit against the First National Bank of Hereford and J. L. Fuqua. The petition of appellant in the first count is one of trespass to try title to lots 13, 14, and 15, block 10, of the town of Hereford. In the second count appellant alleges: That he and one James Stenek about September, 1908, entered into a partnership agreement under the firm name of Sherk & Stenek, in the town of Hereford, for the purpose of conducting a livery, feed, and sale stable. That it was

mutually understood and agreed that each was to contribute one-half of all the money necessary. A. L. Sherk and James Stenek purchased from J. F. Easterwood the above lots on which was situated a barn, for the purpose of conducting said business. $6,000 was the agreed consideration for the lots. $1,500 cash was paid, which it is alleged plaintiff paid himself, and no part of which was paid by Stenek. For the remaining sum, $4,500, Sherk and Stenek executed their vendor's lien note, dated September 9, 1908, due six months after date, bearing interest at the rate of 10 per cent. from date until paid, which note plaintiff alleges he thereafter paid in full. That at the time of entering into said partnership he and Stenek borrowed from the First State Bank & Trust Company of Hereford, $7,575.80, for which they executed their joint note with interest at 10 per cent. from maturity and which matured September 15, 1909. That appellant paid on said note $2,500 and has agreed to pay the balance, and that Stenek paid no part of said note and is released therefrom. That plaintiff placed $1,000 worth of improvements on said lots out of his individual funds. Appellant further alleges, in consideration of said improvements, and on account of said payments for Stenek and the assumption of the partnership indebtedness, that Stenek executed his warranty deed to all of said premises and improvements above described, dated March 21, 1910, conveying all of the interest Stenek had in said premises. Appellant further alleges on or about the 19th day of February the appellees filed for record and had recorded with the county clerk of Deaf Smith county a certain deed of trust on said lots 13, 14, and 15, block 10, original town of Hereford, to secure the payment of certain indebtedness due by said James Stenek to the appellee First National Bank, with appellee J. L. Fuqua as trustee named in said deed of trust; that the deed of trust was given to secure indebtedness evidenced by notes executed by James Stenek and by James Stenek and one O. E. Rood; that no part of said indebtedness was due or owing by appellant or by the partnership of Sherk & Stenek; and that said firm at that time was insolvent. The appellant asked for title and possession of the lots, or, if that could not be decreed to him, that he have his judgment, fixing a partnership lien on Stenek's interest in said property and decreeing Sherk's said lien a prior lien to any lien of the appellees which they assert under said deed of trust. Appellant prayed that the partnership lien so found should be decreed to secure him in the payment of the sum of $7,287.90, together with all interest due thereon.

The appellees set up the deed of trust on said lots and other property to secure the indebtedness set out in appellant's petition as owing by Stenek individually and by Stenek and O. E. Rood, praying that it be adjudged a prior lien over the asserted lien of appellant, etc.

The appellant introduced a warranty deed from J. F. Easterwood to A. L. Sherk and James Stenek, reciting a consideration of $6,000; $1,500 cash, and $4,500 evidenced by a promissory note conveying lots 13, 14, and 15, block 10, original town of Hereford. This deed is dated September 9, 1908, and was filed for record March 11, 1910. Appellant also introduced a warranty deed from James Stenek to A. L. Sherk, to all of section No. 248, block M-6, Castro county, containing 661 acres of land, lots Nos. 13, 14, and 15, block 10, town of Hereford, and also said deed recited: "This deed conveys all of the stock of buggies, carriages and horses and stock of feed of every kind and character now owned by us and situated in the livery barn of Sherk & Stenek, in Hereford, Texas." This instrument is dated the 21st day of March, 1910, and filed for record the 22d day of March, 1910. The note for $4,500 by Sherk & Stenek to Easterwood was transferred by Easterwood to the Western National Bank of Hereford, and by that bank turned over to appellee bank, and Sherk & Stenek executed their note to appellee bank for the sum of $4,615.25, to pay off the original $4,500 note. Sherk testified he paid the note he and his partner executed to the appellee. He claims to have paid it out of proceeds derived from property he owned in Oklahoma. At the time that Stenek executed the deed of trust to secure appellee there was $3,686.55 due on the note executed to appellee for $4,615.25, which balance appellant testifies he paid out of his individual funds. The firm of Sherk & Stenek also borrowed $7,575.80 from the State Bank & Trust Company of Hereford, and before the execution of the deed of trust appellant testifies he paid on the $7,575.80 the sum of $2,000, and that he placed improvements on the lots to the value of $1,700 out of his own money, and that he paid the cash consideration of $1,500 out of his own money. By the deed from Stenek to Sherk, March 21, 1910, he got property of the partnership of the value, the lots, horses, buggies, etc., lowest estimate $6,220, and highest estimate $9,350. The section of land sold to appellant by Stenek named in the deed was estimated to be of value between $6,400 and $7,680. This land was the individual property of Stenek, and, in addition to the property mentioned in the deed, Sherk got the notes belonging to the partnership of about $2,000. It is proper to state that the $2,000 claimed to have been paid by Sherk on the $7,575.80 note is not shown to have been paid out of appellant's individual funds, but was paid in small amounts at various times, and it is not made certain that it was not paid out of the partnership fund before the deed of trust was executed. The appellant, in the trade between Stenek and himself, in the deed, agreed to assume all of the balance due on

the partnership debt as well as the sum of $2,028, due on the section of land conveyed, and also the sum of $624, due the state of Texas, on said land. The deed of trust executed by Stenek to secure appellee bank is dated February 2, 1910, and was recorded February 18, 1910, and the amount so secured was about $4,000, which indebtedness due from Stenek to the bank individually is $231.82, and the balance due was owing by Stenek and O. E. Rood to the bank. The amount so secured was in no way a partnership indebtedness owing by the firm of Sherk & Stenek. The deed of trust conveys lots 13, 14, and 15, block 10, in the town of Hereford, and section 248, block M-6, Castro county, the same property conveyed by Stenek to Sherk by deed, and also includes an additional lot, a quarter of block No. 3, Mabry's addition to the town of Hereford. It is admitted that the firm of Sherk & Stenek, on the date of the deed of trust, and on the date of the trial, was insolvent, and that Stenek was a fugitive from the country. There is some conflict of testimony as to the amount of money originally put into the partnership by Stenek and the amount paid on the notes, and the question is made by the testimony as to whether the sums paid by Sherk were not out of partnership funds but out of individual means. The testimony also raises the issue as to whether the lots in fact were included as partnership property or were only held jointly by Stenek and Sherk under the deed to them. The trial court peremptorily instructed the jury that appellant had not made out his case and instructed a verdict for the appellees, giving to the jury the form of their verdict, which they rendered and returned into court, and upon which judgment was entered.

The appellant, by various assignments, complains of the action of the court in instructing a verdict for appellees, on the ground that when the deed of trust was executed by Stenek to appellees the partnership of Sherk & Stenek was insolvent; that said firm owed appellant large sums of money, and he was entitled to a partner's lien on said lots before outside debts were paid; and that, if appellees were entitled to recover anything, it was no more than the interest of James Stenek in the property after all the firm debts of Sherk & Stenek were paid, and, as the debts were in excess of the property, the appellant took nothing by its deed of trust.

[1] A lien given by one partner on his interest in the partnership property to secure individual indebtedness is not invalid for that reason, even if the partnership is insolvent at the time. Wiggins v. Blackshear, 86 Tex. 665, 26 S. W. 939.

[2-5] It may be said generally the right of the partner is in effect a right to share in the surplus left after discharging all the firm debts, including the reimbursement to the partner for advancements made by him in excess of his proportional share. Each part-

ner has the right to require all the firm assets to be applied to the payment of the firm debts. But this right of a partner is property and can be sold and transferred. It is effectually sold and transferred by the sale and transfer of all the interest in the firm property whether to his partner or to a stranger. Such a sale and transfer dissolves the partnership and extinguishes the right the partners have in the property as partnership assets. The property is converted into the individual property of the purchaser, free from all the equities of the seller, even if the purchaser has, as a consideration for such purchase, agreed to pay the firm debts. Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370; Huiskamp v. Moline Wagon Co., 121 U. S. 310, 7 Sup. Ct. 899, 30 L. Ed. 971; Willis v. Heath (Sup.) 18 S. W. 801; Willis v. Thompson, 85 Tex. 301, 20 S. W. 155; Hawkins v. Western National Bank of Hereford, 146 S. W. 1191, and authorities therein cited. Appellant urges upon our consideration the case of Rogers v. Nichols, 20 Tex. 719. Upon an examination of that case it will be found the general proposition as above stated is sustained. It is said therein: "By the agreement of the 11th of July, 1856, the plaintiffs contracted to convey to Davis their interest in the partnership property, and he contracted to secure them against liabilities of the firm, and for the performance of this and other stipulations they expressly retain the lien upon the property. This agreement, if consummated, operated as a dissolution of the partnership. It completely severed the interests of the partners and gave them distinct rights and remedies. If plaintiff had not retained a lien upon the property, it would undoubtedly have been liable to be taken in execution in satisfaction of the individual debts of Davis, free from any claim of theirs or their joint creditors." In that case the retiring partners reserved an express lien upon the property turned over to Davis, and it was so expressed in the contract between the parties. Nothing of that kind was reserved by Stenek in his sale to Sherk. Stenek sold to his partner all his interest in the firm property, thereby dissolving the partnership and extinguishing any lien which Sherk may have had by virtue of the partnership. Sherk assumed to pay the debts of the firm for which he was personally liable without such assumption, and, in consideration for the title to the property, waived his partnership lien on it. It may be noted, also, that he received, in consideration a section of land, the individual property of Stenek, for such assumption. It will be found that the total value of the property which Stenek conveyed to Sherk, individual and partnership, was about $19,035, and that the total indebtedness assumed by Sherk individual of Stenek, and of the partnership, was about $14,138.55, according to Sherk's own estimate.

[6] The deed of trust to the appellee by Stenek had been on record since February 18, 1910, up to the 21st day of March, 1910, when Sherk took conveyance of the property to himself. He cannot be heard to say he had no notice thereof; the law charges him with notice. If he desired to enforce a partnership lien of which the law and the rules of equity afforded him the remedy, if he would pursue them, he should have retained his relation to the partnership property as a partner. Appellant having elected to dissolve the partnership and take over all the property of the partnership in his individual right and in addition secured the title to the individual property of Stenek, it occurs to us that he ought not at this time be heard to urge that the quasi lien which he had on the date of the deed of trust, but which he has since waived, should be given preference over the express lien of the appellee, of which appellant was charged with notice, when he took over the property.

We conclude the court properly, under the undisputed facts of this case, instructed a verdict for the appellee, and that the case should be affirmed, and it is so ordered.

### On Motion for Rehearing.

The statement in our former opinion that there was one note for the sum of $2,028 against the Castro county section of land, we find to have been an error. There appears to have been two notes for that amount against said land. In the former opinion, it appears that we said that the note for $4,500 was executed by Sherk & Stenek, to Easterwood, and by him transferred to the Western National Bank of Hereford, which bank turned over said note to the appellee bank and for which Sherk & Stenek executed their note for $4,615.25 to appellee. This statement is inaccurate. The record shows the Western National Bank of Hereford purchased the vendor's lien note for $4,500 from Easterwood, and that Easterwood by a written transfer conveyed the note and vendor's lien on the lots in question to the Western National Bank of Hereford, which the bank filed and placed of record. Stenek, acting for Sherk & Stenek, made arrangements with appellee bank to borrow money sufficient to pay off the $4,500 vendor's lien note and executed to the appellee bank the note for $4,615.25, signing the same Sherk & Stenek, by James Stenek. Fuqua, the president of the appellee bank, testified that Stenek drew his check on appellee in favor of the Western National Bank of Hereford for the amount of $4,500 and interest, which his bank paid; that he knew nothing of the note further than that he understood the purpose in borrowing the money was to pay off the note held by the Western National Bank; that the note was brought by Stenek to the bank in an envelope with other papers, to be kept by the bank in safe-keeping; that the bank did not take an assignment of the vendor's lien note and did not hold it as collateral or security for the $4,615.25 note, as at that time Sherk & Stenek were regarded good for that amount on their personal note. Appellee did not get the note from the Western National Bank of Hereford, but it was taken to appellee's bank by Stenek with his other papers to be kept therein. G. A. F. Parker, the president of the Western National Bank of Hereford, testified that it was his recollection that his bank had been notified by appellee bank they would pay the $4,500 note, and his bank sent it over there in a clearance settlement, but he was not clear as to that—it may have been that James Stenek gave a check on the First National Bank in payment of this note. Parker testified he placed the following indorsement on the back of the vendor's lien note for $4,500: "This note was paid March 20, 1909, to the Western National Bank of Hereford, but was not marked paid. It was taken up by the First National Bank of Hereford and at their request was marked, 'Released by us, March 15, 1910.'" This witness states no one told him to put the indorsement on the back of the note; that he insisted on putting it thereon before he would release the land; that he knew there was some trouble; and that he wanted to show why he did it. The appellant, Sherk, testified the Western National Bank bought the note for $4,500 from Easterwood, and that, "We (Sherk & Stenek) borrowed the money from the First National Bank to pay off the $4,500 to the Western National Bank." The money which he paid the First National Bank was on the note for the sum of $4,615.25, payable to appellee, and was the note upon which he got the money to pay off the $4,500 note. He further testified that Stenek paid the $4,500 note to the Western National Bank; that he was not present when the $4,615.25 note was executed or the money paid the Western National Bank. It was his understanding that appellee bought the $4,500 note from the Western National Bank, but it did not buy the vendor's lien prior to the time Stenek executed the $4,615.25 note to appellee for the money. He does not state when or how he got such understanding or from whom he got it. Fuqua further testified that it was not the understanding that Stenek was to taken the money and pay off the vendor's lien note to Easterwood and have it transferred to the appellee bank, and that it was not the understanding that Stenek was to bring the note to the bank of appellee and leave it there, and he was not asked to leave it there, but he did so voluntarily. Some time in February, 1910, the appellee demanded security from Sherk on the balance due on the $4,615.25 note executed to the bank by Sherk & Stenek, which was not given. There is a dispute as to whether Fuqua at that time threatened to foreclose a vendor's lien on the lots for the note then held by it. After

the appellant paid off the note for $4,615.25, Parker executed a release of the vendor's lien, and appellee placed the release of record. To the execution of this release, Sherk, through his attorney, and perhaps personally, objected, and presumably this was when Parker made the indorsement he did on the note. Fuqua at that time had the deed of trust from Stenek to secure his (Stenek's) individual indebtedness, as stated in the former opinion. Fuqua states that he got the release because Parker wanted to make it. The reason he did not have it released before was he did not know it was in Parker's name. He said he had it released to clear the record and did so at the request of Parker and after appellant and his attorney told him not to do so. He told Parker the note held by appellee had been paid off. Appellant in his motion for rehearing asks us to set out the consideration as expressed in the deed from Stenek to Sherk. We think we have done so sufficiently in the former opinion, with the exception of omitting one note for $2,028, assumed by Sherk.

[7, 8] In appellant's motion for rehearing, he urges for the first time in this court that the trial court and that we were in error in not holding that he had a vendor's lien on the lots for the money paid by him in the discharge of the note to the appellee, for the sum of $4,615.25. It will be seen by his petition he alleges that he paid off the vendor's lien note for $4,500, payable to Easterwood and by him transferred to the Western National Bank. He only prays to have a partnership lien decreed and for general relief. The facts introduced and sworn to by appellant show that Sherk & Stenek paid off that note with money obtained from appellee upon the note executed by Sherk & Stenek. If appellant had a lien on the land, it was by virtue of the law and rules of subrogation. It has been said that subrogation is not a universal remedy for parties who have lost their money. Before subrogation can be decreed, the facts on which it arises must be distinctly and appropriately alleged and shown, and the equity therefrom must plainly appear. Appellant should have plainly alleged the facts which gave him the right of subrogation and should have asked for such relief in his petition. Crow v. Fiddler, 3 Tex. Civ. App. 576, 23 S. W. 17; Wilkin v. Owens, 102 Tex. 197, 114 S. W. 104, 115 S. W. 1174, 117 S. W. 425, 132 Am. St. Rep. 867; 37 Cyc. 390. In presenting the case to this court, he nowhere, by assignment, proposition, or authority cited, requested a consideration of the question of his now contended for vendor's lien, but upon his motion for new trial he urges that we should nevertheless have considered the question and given a judgment on such lien. The facts proven in this case show that appellant did not pay off the vendor's lien note for $4,500; but, on the contrary, the firm of Sherk & Stenek paid off the lien out of money borrowed from appellee on their joint note for $4,615.25. If the lien was in any way preserved by appellee bank for its security for the money loaned and thereby became part of the security for the note which appellant afterwards paid, the facts which subrogate the bank to such lien and entitled appellant to be subrogated to its lien should have been specifically alleged. This appellant did not do. It is now urged by him that under his prayer for general relief he was entitled to that remedy. We cannot agree with appellant. If the appellee paid the vendor's lien note merely as an advancement to Sherk & Stenek, upon their note for $4,615.25, and upon their personal responsibility and relied upon their promise to pay, then the vendor's lien was extinguished and no subsequent act of appellee or Sherk could revive it. Smith v. Morrison, 29 S. W. 1116; Fievel v. Zuber, 67 Tex. 275, 3 S. W. 273. Unless there was some agreement or understanding that the appellee should be subrogated to the rights of the lienholder when the vendor's lien note was paid or the money advanced to pay the same, then the payment absolutely extinguished the debt and the lien on the land. A new debt and obligation was thereby created upon the part of Sherk & Stenek without any lien on the land, and, when Sherk paid off this personal obligation of the partnership, he was only subrogated to such debt and only entitled to contribution as a partner out of the firm assets when the partnership should be settled between themselves, which in this case occurred when appellant took over all the firm property in consideration of his payment or assumption of the debts due by the firm. 37 Cyc. 376. The doctrine upon which are based our conclusions is stated in Gadsden v. Brown, Speers, Eq. (S. C.) 37–41, which case seems to be the leading case on this question. We quote as follows: "The doctrine of subrogation is a pure, unmixed equity, having its foundation in the principles of natural justice and from its very nature never could have been intended for the relief of those who were in a condition in which they were at liberty to elect whether they would or would not be bound, and, as far as I have been able to learn its history, it never has been so applied. If one with the perfect knowledge of the facts will part with his money or bind himself by his contract in a sufficient consideration, any rule of law which would restore him his money or absolve him from his contract would subvert the rules of such order. It has been directed in its application exclusively to the relief of those that are already bound who could not but choose to abide the penalty. * * * But I have seen no case, and none has been referred to in the argument, in which a stranger, who was in a condition to make terms for himself and demand any security he might require, has been protected by the principle."

The case of Ætna Life Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, 31 L. Ed. 537, quotes the above case in approval and says: "This is perhaps as clear a statement of the doctrine of this subject as is to be found anywhere. * * * Subrogation as a matter of right as it exists in the civil law from which the term has been borrowed and adopted in our own is never applied in aid of a mere volunteer."

[9] We held in this case, in the opinion heretofore rendered, that the sale of Sherk & Stenek dissolved the partnership and thereby extinguished the quasi lien of the partners in the partnership effects as such. We think we were correct, and the authorities there cited sustain the proposition, as well as many of the authorities cited by appellant in his motion for rehearing, especially the case of Johnston v. Standard Shoe Co., 5 Tex. Civ. App. 398, 24 S. W. 581, and the authorities cited therein, some of which are Stansell v. Fleming, 81 Tex. 298, 16 S. W. 1033; Kendall v. Hackworth, 66 Tex. 499, 18 S. W. 104; Weaver v. Ashcroft, 50 Tex. 427; Willis v. Thompson, 85 Tex. 311, 20 S. W. 155. In the cases upon which appellant appears mostly to rely a distinction is easily made, but which, as we view this case, is unnecessary at this time to take the time or space necessary to do. In nearly, if not all, the cases cited, the property was then under administration of the court, or the sale of the partnership property or assignment thereof by the individual members for individual debts was attacked for fraud or because conveyed without the consent of the other members of the firm. In this case appellant asks the court to declare his partnership lien a preference lien over the mortgage lien of appellee upon Stenek's undivided interest. He, at the time he brought suit, had no partnership lien to foreclose. He waived it by having the partner transfer all the assets to him by deed long before he brought suit and thereby dissolved the partnership, and, even before that, he had given notice of such dissolution. The court could not decree a lien which appellant did not have, and, if he ever had, had waived. He does not even allege that Stenek executed the mortgage of the lots without his knowledge or consent, or that he did so with the intent to hinder, delay, or defraud the creditors of the partnership or appellant. If he had made such allegation, he might have been in a better position. He was invoking the powers of a court of equity to cancel the deed of trust and to enforce a lien which on the face of the transaction appears to have been waived by him, and if for any reason the execution of the deed of trust was inequitable, such as the unauthorized act of Stenek in mortgaging his interest to appellee, or in fraud of his rights, he should have specifically alleged such facts in his petition and should have established the same by proof. This he did not do. On the contrary, when he took the transfer to himself of all the assets, the law charged him with notice of such mortgage. If he wished the court to administer the partnership assets so as to give the partnership creditors and himself preference, he should, before waiving the lien given him in equity, have invoked its aid; but he saw proper to pursue a different course and took the property in his individual right and upon his own account, assumed the debts, and without going into a court with all the property and asking that it be distributed according to justice and right. He does not in this action even offer to turn over all the assets and request an accounting by the court. He himself undertook to settle all equities, not only of the partnership effects and creditors, but also the individual creditors of Stenek. Having assumed to do so, he should not complain that when he took the lots in question they were charged with a lien. We think he should be held to his election and its consequences.

In the case of Wiggins v. Blackshear, 86 Tex. 665, 26 S. W. 939, Judge Stayton, speaking for the court, said: "When, however, the property of a partnership passes into the custody of a court for administration, as in cases of bankruptcy or assignments made by an insolvent firm, then the court will administer it as was the right of the several parties to have it administered while controlled by themselves. In such cases the court's action is based as fully upon the rights of the partners as between themselves as upon the rights of creditors, and, when the result of a proceeding is to discharge partners from further liability, then the first theory before referred to may have been given weight in establishing an administrative rule in such cases." The rule referred to is: "That the partnership property is presumed to have been obtained though credits given to the firm and that for this reason partnership creditors ought to be preferred in the distribution of its assets." Further, in speaking of this case, the court said: "In accordance with the general rule before stated, it has been steadily held that one partner may in good faith convey his interest in partnership assets to another, and that thereby all equities of such partner of all partnership creditors to subject such assets first to the payment of their claims is thereby lost. * * * It has been held that one member of an insolvent partnership, all of the members being insolvent, may transfer in good faith, with the concurrence of the other partners, his interest in the partnership property to an individual creditor, and that for this simple contract the creditor cannot maintain a bill to subject the property to the payment of a debt due to him by the firm. Case v. Beauregard, 99 U. S. 119 [25 L. Ed. 370]. As priority of right of

partnership creditors over creditors of the individual members of the firm rests on the right of the partners themselves, can there be any doubt, if an insolvent partnership be dissolved by mutual agreement of its members and its property be divided between them 'in accordance with their several interests, that partnership creditors would lose all right to priority of payment out of the property so distributed? Members of a partnership having thus voluntarily surrendered their right so as to have the assets appropriated, each would hold property received in distribution in his separate right, subject alike, however, to the claims of all creditors, both individual and partnership. Such transaction would not be fraudulent as to either class of creditors unless some further fact intervened, for the property in the hands of each partner would be subject, as before, to the claims of partnership creditors as well as others."

We are of the opinion that we were correct in affirming the case originally and find no grounds stated in the motion for rehearing sufficient to change our views as therein expressed.

We therefore overrule the motion.